

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00080-CR

_____

DUSTIN KYLE SCOTT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. 1222718

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

## O P I N I O N

Dustin Kyle Scott was convicted of assault on a public servant, a third degree felony, and sentenced to five years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.01(b)(1) (West Supp. 2013). His primary issue on appeal deals with the fact that a juror failed on voir dire to reveal that he knew Sharon Scott (Scott's mother), a witness in the case. We affirm the judgment of the trial court.

## I.      Background of Offense

Sharon had previously obtained a family protective order involving Scott. Sulphur Springs police responded to Sharon's telephone call wherein she sought their protection from Scott after a serious disagreement arose between the two of them after they had both been drinking alcohol. The police officers forcibly restrained Scott as an incident to his arrest on the charge that he had assaulted Sharon. During Scott's ensuing scuffle with the police, he kicked the door of the police car into which he was being placed. The car door struck the shin of one of the police officers, causing the officer bodily injury. It was the blow to the shin of the policeman which gave rise to the criminal charge against Scott. Sharon testified at the punishment phase of the trial, taking the position that Scott should not be imprisoned.

## II.     Non-Disclosure by Juror

During voir dire, although the veniremembers were collectively asked whether any of them knew Sharon, none responded in the affirmative. During the trial, Sharon (who, as a fact witness, had been placed under the rule and had not previously seen the jury) recognized one of the jurors as a former co-worker. Scott brought the matter to the attention of the trial court and

2

Sharon testified that she and the juror had worked for the same employer "for about 20 years," although it had been "a good while ago." Even so, Sharon testified that she knew the juror "real well." The trial court stated, "Okay. All right. I'm going to tell you, after these proceedings are over the Court is going to inquire as to that juror, and I will question that juror." The parties agree (and the record supports) that the trial court did not question the juror as it indicated it would.

Scott filed a motion for new trial and, prior to the trial court's ruling, supplemented that motion with an affidavit by Sharon.[1] Sharon's affidavit provided, in pertinent part, as follows:

> 12. "I worked with Jimmy Green at Grocery Supply Co. in Sulphur Springs, Texas for many years. Jimmy Green worked in the computer room and the IT department. I worked in the Transportation Department for at least 10 years.
>
> 13. "I have also seen both Jimmy Green and his wife through the years at stores in and around Sulphur Springs. We have spoken with each other often.
>
> 14. "I remember the following which took place while Jimmy Green and I were both working at Grocery Supply Company. Jimmy Green came into my office, and he told me how he had just gotten back from Las Vegas with his wife. Jimmy then told me about how when he and his wife were checking into their hotel the desk clerk there said she knew someone who lived in Sulphur Springs, Texas. Jimmy then told me when he asked the desk clerk who that person was the desk clerk told him it was 'Sharon Scott.' Jimmy then told me that he told the desk clerk he and I work together!! Jimmy then told me he and the desk clerk laughed about what a small world we live in."

---

[1]Rule 21.7 of the Texas Rules of Appellate Procedure permits a trial court to receive evidence at the hearing by affidavit. TEX. R. APP. P. 21.7; *see Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006). Neither Scott nor the State objected at the hearing to receiving evidence by affidavit, and neither Scott nor the State has assigned any error related to the affidavit for our review on appeal. We note the affidavit was never formally offered or admitted into evidence. *See Jackson v. State*, 139 S.W.3d 7, 20–21 (Tex. App.—Fort Worth 2004, pet. ref'd) (affidavit attached to motion for new trial does not constitute evidence unless admitted into evidence at hearing on motion). However, because the parties and the judge treated the affidavit as if it was admitted in evidence, it is deemed admitted. *See Killion v. State*, 503 S.W.2d 765, 766 (Tex. Crim. App. 1973); *Labib v. State*, 239 S.W.3d 322, 334 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Amador v. State*, 221 S.W.3d 666, 674 (Tex. Crim. App. 2007).

After a hearing on Scott's motion for new trial and after counsel for the parties argued the motion, the trial court denied the motion. Scott's sole issue on appeal centers on his contention that the trial court erred by denying the motion for new trial.

### III. Discussion of Applicable Law

As a preliminary matter, we note that in his brief, Scott relies almost exclusively on civil caselaw and not upon caselaw involving criminal matters. Rulings in civil cases do not provide precedent that we are obligated to follow in criminal cases. When citing caselaw as authority in a criminal case, prior criminal (not civil) cases should be cited when ample authority exists.

A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Barnett v. State*, 847 S.W.2d 678, 679 (Tex. App.—Texarkana 1993, no pet.). A trial court abuses its discretion when its decision lies outside the zone within which reasonable persons might disagree. *Gonzales*, 304 S.W.3d at 842 (citing *Smith v. State*, 286 S.W.3d 333, 339–40 (Tex. Crim. App. 2009)). "The trial court is the sole judge of the credibility of the testifying jurors." *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).

Both the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution provide criminal defendants the right to a trial by an impartial jury. U.S. CONST. amend. VI; TEX. CONST. art. I., § 10; *Uranga v. State*, 330 S.W.3d 301, 304 (Tex. Crim. App. 2010). The protection under the Texas Constitution is identical to that offered by the Federal Constitution. *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998); *Uranga v.*

4

*State*, 247 S.W.3d 375, 377–78 (Tex. App.—Texarkana 2008), *aff'd*, 330 S.W.3d 301 (Tex. Crim. App. 2010). The constitutional guarantee of the right to an impartial jury[2] includes adequate voir dire to identify unqualified jurors. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). The Texas Court of Criminal Appeals' interpretation of this right requires careful review of the following cases.

First, *Salazar v. State* held that a trial court erred in denying a mistrial when a juror had withheld that he had been a fact witness in a similar case. *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978). Because the information was material and the defendant was "without fault or lack of diligence," the withheld information prevented the defendant from properly exercising his peremptory challenges. *Id*. at 482–83.

Second, the Texas Court of Criminal Appeals found reversible error due to "a strong probability that a biased juror served." *Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim. App. [Panel Op.] 1978). In that murder trial, the jury panel was asked if any of them knew "George Parker, Sr., George Parker, Jr., or George Parker, III (the deceased)," yet no one responded that they did. *Id*. at 44. It was later determined that a juror had frequented, for some thirty years, a restaurant owned by George Parker, Sr., that he would converse with both George Parker, Sr., and George Parker, Jr., at the restaurant and would sit at a table with them on those occasions and that there was a "congenial atmosphere in the restaurant which caused many customers to feel that they knew and were friends of the Parkers." *Id*.

---

[2]We note that the Texas Court of Criminal Appeals has suggested an equivalent right might exist based on the Sixth Amendment's right to counsel but declined to decide the issue affirmatively. *Franklin v. State*, 138 S.W.3d 351, 357 (Tex. Crim. App. 2004). Because Scott argues only a violation of his right to an impartial jury, we likewise decline to discuss this issue.

Third, in *Decker v. State*, the Texas Court of Criminal Appeals held a mere co-worker relationship between a juror and a complainant at trial was not material. *Decker v. State*, 717 S.W.2d 903, 906–08 (Tex. Crim. App. 1983) (op. on reh'g). The juror had been a co-worker of the victim for nine months but had only met the victim "'seven, eight times'" and did not recognize the victim until the victim personally appeared in the courtroom. *Id*. at 906–08. The juror testified that he "d[id]n't think [the relationship] would make a bit of difference" and that he could be fair and impartial. *Id*. at 906.

Fourth, the Texas Court of Criminal Appeals held that a defendant failed to exercise diligence when a juror misrepresented an answer on her written juror questionnaire but the defendant failed to orally question the juror. *Gonzales v. State*, 3 S.W.3d 915, 916 (Tex. Crim. App. 1999). The court held that the defense had an obligation to ask questions calculated to elicit information that indicates whether the juror could be impartial. *Id*. at 917. The court concluded, "[W]e have consistently held there is no error where counsel has not met that obligation." *Id*.

The final cases concerned an appeal that was heard by this Court. In *Franklin I*, this court held that because counsel had failed to perfect a bill of exceptions, it could not determine whether the information withheld by the juror was material and affirmed a conviction. *See Franklin v. State*, 986 S.W.2d 349, 355 (Tex. App.—Texarkana 1999), *rev'd*, 12 S.W.3d 473, 476 (Tex. Crim. App. 2000). When questioned by the trial court, the juror testified that her daughter was in the same Girl Scout troop as the victim and that the juror was an adult leader in that troop. *Id*. at 352. The juror, nevertheless, testified that she could be fair and impartial. *Id*.

6

The trial court then denied the defense's request to question the juror further. *Id.* The Texas Court of Criminal Appeals reversed in *Franklin II*, reasoning that counsel had exercised due diligence and preserved error by requesting to examine the juror, stating what questions he would have asked, and opining that he would have exercised a peremptory strike. *Franklin v. State*, 12 S.W.3d 473, 476–77 (Tex. Crim. App. 2000). Reviewing this Court's opinion on remand, the Texas Court of Criminal Appeals affirmed in *Franklin III* this Court's conclusion that reversible error occurred. *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004). *Franklin III* observed that the trial court prevented proper development of the record, that the relationship between the juror and the victim's family had a tendency to show bias, and that the record did not establish the error to be harmless beyond a reasonable doubt. *Id.* at 355–56.

Collectively, these cases establish the following standards.

1. "Where a juror withholds material information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury." *Salazar*, 562 S.W.2d at 482.

2. "[T]he defendant must show that the juror withheld material information during voir dire, and the information is withheld despite due diligence exercised by the defendant." *Franklin*, 138 S.W.3d at 355–56.

3. "[T]he good faith of a juror is largely irrelevant when considering the materiality of information withheld." *Franklin*, 12 S.W.3d at 478.

7

4.      Although the defendant is not required to show actual bias, the information concealed by the veniremember must possess a tendency to show bias.[3] *Franklin*, 138 S.W.3d at 356; *see* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006).

5.      A defendant must establish both that error took place and that the error resulted in harm. *Gonzales v. State*, 3 S.W.3d 915, 917 n.2 (Tex. Crim. App. 1999). Only if error resulted in harm would a new trial be warranted. *Id*.; *see Lucero v. State*, 246 S.W.3d 86, 95 (Tex. Crim. App. 2008) (declining to decide whether Bible was outside influence but concluding any error would be harmless).

## IV.    Application of Law to the Facts of this Case

We note that Scott has not complained about the denial of his motion for mistrial and has not complained that he was unable to properly exercise his peremptory challenges—two themes consistently present in the above cases. We conclude, based on our review of the caselaw, that Scott's failure to complain about the denial of his motion for mistrial does not prevent our review of the denial of that motion. We will assume, without deciding, a complaint about failure to properly exercise peremptory challenges is a subsidiary question fairly included in the complaint that withheld information prevented an impartial jury.[4]

---

[3]The Texas Court of Criminal Appeals has adopted the definition of bias used by the Texas Supreme Court. *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982) ("We hereby adopt those definitions."). *Anderson* defined "bias" as "'an inclination toward one side of an issue rather than to the other . . . (which) leads to the natural inference that (a juror) will not or did not act with impartiality,' and defined 'prejudice' simply as 'prejudgment.'" *Id.* (quoting *Compton v. Henrie*, 364 S.W.2d 179 (Tex.1963)); *see Henson v. State*, 173 S.W.3d 92, 98–99 (Tex. App.—Tyler 2005, pet. ref'd).

[4]The Texas Rules of Appellate Procedure require that every subsidiary question fairly included be addressed. *Bailey v. State*, 201 S.W.3d 739, 743–44 (Tex. Crim. App. 2006); *see* TEX. R. APP. P. 38.1, 38.9, 47.1.

The facts of this case lie somewhere between *Franklin III* and *Decker*. The facts here have less of a tendency to show bias than the facts in *Franklin III*, but we do not know whether the tendency to show bias is significantly greater than in *Decker*. No one questioned the juror concerning his relationship with Sharon. Although the initial call to the police was due to what appears to have been a somewhat violent confrontation between Sharon and Scott, she appeared as a witness to ask for leniency for her son, the accused. Because the juror was never questioned, the record is insufficient to determine whether the relationship was material. We conclude this case is distinguishable from *Franklin III* because (1) the relationship in *Franklin III* had a greater inherent tendency to show bias and (2) Scott, by failing to request the opportunity to question the juror as to the effect, if any, his relationship with Sharon would have had on his verdict, failed to exercise due diligence.

This case contains less of a tendency to show the possibility of juror bias than that shown in *Franklin III*. Scott presumes that bias against him can be inferred because the juror knew his mother. The record, though, contains nothing more than mere speculation that the juror was biased (either for or against Scott) because of Sharon's appearance as a witness.

The Texas Court of Criminal Appeals has observed, "'[T]he mere fact that a juror knows, or is a neighbor, or an intimate acquaintance of, and on friendly relations with, one of the parties to a suit, is not sufficient basis for disqualification.'" *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982) (quoting *Allbright v. Smith*, 5 S.W.2d 970 (Tex. Comm'n App. 1928, holding approved)); *Turner v. State*, 671 S.W.2d 679, 681 (Tex. App.—Dallas 1984,

9

pet. ref'd). "[M]ere familiarity with a witness is not necessarily material information." *Franklin*, 12 S.W.3d at 478.

This case does not concern a relationship which, standing alone, suggests an inherent tendency of a juror to hold bias. In *Franklin III*, the daughters of the juror and the victim were both members of the same Girl Scout troop, and the juror herself was the adult leader of that troop. *Franklin*, 138 S.W.3d at 352. The Texas Court of Criminal Appeals noted that this relationship was "one that many people would consider almost a parental role . . . ." *Id*. at 356. Unlike *Franklin III*, there is nothing here to suggest such a parental role. We further note that although Sharon and the juror worked for the same employer, they worked in different departments, and there is no evidence as to the amount of interaction that existed between the departments. Rather, the record in this case establishes the existence of a mere co-worker relationship.[5] While the relationship in *Franklin III* had a tendency to suggest bias even in the absence of a fully-developed record, the relationship in this case does not.

Scott has failed to exercise due diligence in an effort to show that his case was prejudiced by the failure of the juror to disclose the juror's workplace relationship with Sharon. In *Franklin III*, the trial court questioned the witness and the witness testified that she could be impartial. *Franklin*, 138 S.W.3d at 355. Although the defense then requested to further question the juror, the trial court denied any further questioning. *Id.* We believe this is the critical distinction between this case and *Franklin III*. *Franklin III* explicitly relied upon the conclusion that "[t]he

---

[5]We note the twenty-year co-worker relationship in this case is considerably longer than the nine-month relationship in *Decker*. *See Decker*, 717 S.W.2d at 906. The length of the relationship, though, does not necessarily imply a significant relationship—similar to *Decker*, the two may barely know each other.

10

trial judge also deprived Franklin of the ability to develop evidence of bias or prejudice on the record." *Id.* Unlike *Franklin III*, the trial court in this case did not restrict juror testimony. Scott did not object to the procedure suggested by the trial court,[6] did not request to examine the juror either at trial or at the motion for new trial hearing, did not represent he would have exercised a peremptory challenge, and did not state what questions he would have asked the juror.

Scott makes the incorrect presumption that he is entitled to a reversal merely because information was withheld during voir dire by a juror. A defendant is not "'entitled to a reversal of his conviction in any case in which he discovers that a juror withheld information during voir dire.'" *Gonzales*, 3 S.W.3d at 917 n.2 (quoting *Salazar*, 562 S.W.2d at 482 n.5). The information withheld must be both material and withheld despite due diligence exercised by the defendant. *Franklin*, 138 S.W.3d at 356; *Gonzales*, 3 S.W.3d at 917.

Unless the record establishes bias as a matter of law,[7] error has not been shown if follow-up questions are not asked after discovering potential bias. *Gonzales*, 3 S.W.3d at 917. These follow-up questions must be calculated to elicit information indicating a juror's inability to be

---

[6]This opinion should not be interpreted as endorsing the trial court's procedure. Whether the trial court erred in questioning the juror instead of permitting questioning by the attorneys is not preserved for our review. When Sharon recognized the juror at trial, Scott offered no objection either to the trial court questioning the juror or to the postponement of such questioning. *See* TEX. R. APP. P. 33.1. Error preservation is not an "inflexible concept" and "should not apply mechanically." *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013) (stating "no objection" when evidence admitted did not waive error when all parties believed prior arguments were preserved). However, a party must inform the trial court of "'what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Id.* (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Scott, though, did not inform the trial court of what he wanted or why he was entitled to it. Scott did not preserve any complaint concerning the trial court's preference to ask questions from the bench rather than permit the attorneys to question the juror.

[7]Only if the juror indicates he cannot be fair and impartial is bias established as a matter of law. *See Sosa v. State*, 769 S.W.2d 909, 918 (Tex. Crim. App. 1989); *see also Vaughn v. State*, 833 S.W.2d 180, 185 (Tex. App.—Dallas 1992, pet. ref'd).

11

impartial. *Id.* "[A] trial court may hold a juror qualified who states that he can lay aside any opinion which he may have formed." *Williams v. State*, 565 S.W.2d 63, 65 (Tex. Crim. App. [Panel Op.] 1978). Scott failed to pursue the right to question the juror in an effort to establish error.

Although Scott could have pursued this questioning at the hearing on the motion for new trial,[8] he failed to do so.[9] Further, Scott presented no other evidence (such as testimony by Scott's mother) which would bring about the conclusion that the workplace relationship that existed between his mother and the juror was of the nature to implant bias against Scott in the mind of the juror. Instead, Scott relied exclusively on the affidavits attached to his motion for new trial. In the absence of an objection from the State (either at trial or on appeal), the affidavit is not conclusory[10] and is sufficient to show that a workplace relationship existed. That relationship, standing alone, is not sufficient to demonstrate the existence of bias. Sharon's affidavit merely states that she knew the juror and was a co-worker for twenty years, but does not go further to intimate that there was anything about that relationship that would tend to create bias against Scott's case. One could just as easily speculate that the workplace relationship between Sharon and the juror would have benefitted Scott's case as one could guess that Scott's

---

[8]*See Franklin*, 12 S.W.3d at 479 ("The trial court erred in denying appellant the opportunity to ask questions of Juror Spradlin.")

[9]Rule 606(b) of the Texas Rules of Evidence, which provides that a juror may not testify or make an affidavit about jury deliberations or the effects of anything influencing the verdict, contains two exceptions: (1) "whether any outside influence was improperly brought to bear upon any juror," or (2) "to rebut a claim that the juror was not qualified to serve." TEX. R. EVID. 606(b).

[10]The State argues that Sharon's affidavit is conclusory, citing *Barnett v. State*, 847 S.W.2d 678, 680 (Tex. App.—Texarkana 1993, no pet.) (no error based on conclusory affidavit alleging outside influence but failing to specify nature of influence).

12

case was jeopardized by it or whether there was no impact at all. As noted by the State, accepting Sharon's affidavit as absolutely true does nothing to establish that Scott's right to an impartial jury was violated by the failure of the juror to disclose his workplace acquaintance with Sharon.

Unlike *Franklin III*, Scott did not exercise due diligence. Scott failed to explore the relationship between the juror and Sharon to provide information from which an assessment could be made of whether the information was material. Scott did not request to question the juror, either at trial or the hearing on the motion for new trial. Scott incorrectly presumed a mere acquaintance would be sufficient and failed to develop any record exploring the relationship.

Because Scott has failed to show the information was withheld despite due diligence, Scott has failed to establish error.

## V.     Conclusion

Scott has not shown that the trial court's denial of Scott's motion for new trial was an abuse of discretion. Although it is undisputed that the juror was a co-worker who was acquainted with Sharon and that the juror did not disclose that acquaintance on voir dire, neither that relationship nor the juror's failure to disclose it necessarily establishes a tendency of that juror to hold a bias against Scott. Further, Scott failed to exercise due diligence in developing a record to permit a determination of whether the relationship had a tendency to show bias. This is not a case where a trial court overruled an express request to develop the record. It is, rather, a case where no such request was ever made. Scott neither objected to the trial court's suggested procedure (i.e., that the trial court would speak with the juror when the trial was concluded) nor

did he later remind the trial court to take this step when the trial was over. In addition, Scott never made a request to question the juror about these issues. Because the workplace relationship that was shown does not inherently establish bias and Scott failed to exercise due diligence to establish that the failure to divulge resulted in bias to his case, error has not been shown.

For the reasons stated, we affirm.


Bailey C. Moseley
Justice

Date Submitted:     December 5, 2013
Date Decided:      December 17, 2013

Publish

14