ELEVENTH COURT OF APPI
6/9/2017 11:06:4

## No. 11-16-00244-CR

IN THE COURT OF APPEALS
FOR THE ELEVENTH DISTRICT OF TEXAS
AT EASTLAND

RECEIVED IN
11th COURT OF APPEALS
EASTLAND, TEXAS
06/09/17 11:06:40 PM
SHERRY WILLIAMSON
Clerk

# DWAYNE UTERRAL HARDEMAN,
### Appellant

# THE STATE OF TEXAS,
### Appellee

*On appeal from the 35th Judicial District Court
of Brown County, Texas
In Cause No. CR23428*

# BRIEF FOR APPELLANT

*Counsel of Record*

**Michael P. Levine
State Bar No. 24009767**

**Nawaz & Levine L.L.P.
325 N. Saint Paul St. Ste. 2100
Dallas, TX 75201-3871
(214) 741-6500 (phone)
(214) 741-6500 (fax)
mp.levine@yahoo.com**

*Attorney for Appellant*

*Oral Argument Requested*

## LIST OF PARTIES

**APPELLANT:**
Dwayne Uterral Hardeman
McConnell Unit
3001 South Emily Drive
Beeville, TX 78102

**TRIAL COUNSEL FOR APPELLANT:**
Emily Miller
SBN 00796347
707 Center Avenue
Brownwood, TX 78601

Judson Woodley
SBN 24047140
Woodley & Dudley
P.O. Box 99
Comanche, TX 76442

**APPELLATE COUNSEL FOR APPELLANT:**
Michael P. Levine
SBN 24009767
Nawaz & Levine, L.L.P.
325 Saint Paul St. Ste. 2100
Dallas, TX 75201-3871

**TRIAL COUNSEL FOR APPELLEE:**
Elisha Bird
SBN 24060339
Christina Moss
SBN 24078060
Assistant District Attorneys
Brown County Courthouse
District Attorney's Office
200 South Broadway
Brownwood, TX 76801

**APPELLATE COUNSEL FOR APPELLEE:**
Micheal Murray
SBN 00792955
35th District Attorney
Brown County Courthouse
200 South Broadway
Brownwood, TX 76801

**TRIAL COUNSEL FOR WITNESS LAKISHA ANTHONY:**
John Lee Bragg
SBN 0241255
504 Pecan
Brownwood, TX 76801

**TRIAL COUNSEL FOR (NON-TESTIFYING) WITNESS MARCUS PHILLIPS:**
Kirkland Fulk
SBN 00784089
PO Box 1049
Goldthwaite, TX 78644-1049

**TRIAL COUNSEL FOR APPELLANT AT MOTION FOR NEW TRIAL:**
William D. Cox, III
Law Offices of William D. Cox, III
325 North Saint Paul St. Ste. 2100
Dallas, TX 75201

Michael P. Levine
SBN 24009767
Nawaz & Levine, L.L.P.
325 Saint Paul St. Ste. 2100
Dallas, TX 75201-3871

**TRIAL COUNSEL FOR APPELLEE AT MOTION FOR NEW TRIAL:**
Elisha Bird
SBN 24060339
Assistant District Attorney
Brown County Courthouse
District Attorney's Office

200 South Broadway
Brownwood, TX 76801

# TABLE OF CONTENTS

LIST OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v-vii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii-xi

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT ON ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINTS OF ERROR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

STATEMENT OF FACTS. . . . . . . . . ' . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-16

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Point of Error 1, Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

> The trial court erred when it refused to declare a mistrial after it found a juror made a statement of racial bias before the venire, denying Appellant's Constitutional right to an impartial jury. . . . . . . . . . . . 17-24

Point of Error 2, Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

> The trial court erred in admitting extraneous offense evidence Appellant choked Melissa through Lakisha. . . . . . . . . . . . . . . . . . 24-35

*Point of Error 3, Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24*

> *The trial court erred in admitting extraneous offense evidence Appellant choked Melissa through Melissa. . . . . . . . . . . . . . . . . . 24-35*

*Point of Error 4, Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24*

> *The trial court erred in admitting extraneous offense evidence Appellant went to prison for attempting to assault Melissa through Melissa. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-35*

*Point of Error 5, Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24*

> *The trial court erred in admitting extraneous offense evidence Appellant went to state jail for attempted assault against Melissa through Hurt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-35*

*Point of Error 6, Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24*

*The trial court erred in admitting extraneous offense evidence, a judgment, reflecting Appellant went to state jail for attempted assault against Melissa...* .......... *24-35*

*Point of Error 7, Restated.* ...................................... 35

*The trial court erred by allowing the State to impeach Melissa as a subterfuge to admit etraneous offense evidence -Melissa's written statement...* ............... *35-40*

*Point of Error 8, Restated.* ...................................... 35

*The trial court erred by allowing the State to impeach Melissa as a subterfuge to admit etraneous offense evidence - Londrie's account.* 35-40

*Point of Error 9, Restated.* ...................................... 40

*The trial court erred by admitting Lee's interview with Lakisha because it was hearsay and no exception to the hearsay rule applies* 40-53

*Point of Error 10, Restated.* ..................................... 40

*The trial court erred by admitting extraneous offense evidence Appellant choked Melissa within Lee's interview with Lakisha.* .. 40-53

*Point of Error 11, Restated.* ..................................... 40

*The trial court erred by admitting Morgan's conversation with Lakisha because it was hearsay and no exception to the hearsay rule applies* .......................... *40-53*

*Point of Error 12, Restated.* ..................................... 40

*The trial court erred by admitting extraneous offense evidence within Morgan's conversation with Lakisha* ................ *40-53*

*Point of Error 13, Restated.* ..................................... 40

*The trial court erred by admitting Hurt's interview with D. because it was hearsay and no exception to the hearsay rule applies.* ..... *40-53*

*Point of Error 14, Restated.* ..................................... 40

*The trial court erred by admitting extraneous offense evidence within Hurt's interview with D..* ................... *40-53*

*Point of Error 15, Restated.* ..................................... 54

*The trial court erred in denying a request for a lesser included offense of assault by bodily injury..* .................... *54-59*

*PRAYER.* · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · *59*

*CERTIFICATE OF SERVICE.* · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · *60*

*CERTIFICATE OF COMPLIANCE.* · · · · · · · · · · · · · · · · · · · · · · · · · · · *60*

# INDEX OF AUTHORITIES

*Cases*

*Almanza v. State,*
    686 S.W.2d 157 (Tex. Crim. App. 1984). .............................. 58

*Barley v. State,*
    906 S.W.2d 27 (Tex. Crim. App. 1995). ............................ 38, 39

*Franklin v. State,*
    986 S.W.2d 3495 (Tex. App. - Texarkana 1999), rev'd,12 S.W.3d 473
    (Tex. Crim. App. 2000). .............................. 21

*Franklin v. State,*
    12 S.W.3d 473 (Tex. Crim. App. 2000). ......................... 21

*Franklin v. State,*
    138 S.W.3d 351 (Tex. Crim. App. 2004). ........................... 21

*Gamboa v. State,*
    296 S.W.3d 574 (Tex. Crim. App. 2009)................................. 20

*Gigliobianco v. State,*
    210 S.W.3d 637 (Tex. Crim. App. 2006). ........................... 26

*Gonzales v. State,*
    3 S.W.3d 915 (Tex. Crim. App. 1999). ........................... 21

*Gonzales v. State,*
    304 S.W.3d 838 (Tex. Crim. App. 2010). ........................... 20

*Guzman v. State,*
    188 S.W.3d 185 (Tex. Crim. App. 2006). ........................... 56

*Hall v. State,*
    225 S.W.3d 524 (Tex. Crim. App. 2007). ......................... 55, 56

*Hughes v. State,*
    4 S.W.3d 1 (Tex. Crim. App. 1999). ......................... 28, 38, 39

*Hughley v. State*,
   06-15-00174-CR, (Tex. App. – Texarkana, July 8, 2016) (mem. op.) (not
   designated for publication). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56


*Johnson v. State*,
   967 S.W.2d 410 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . 34

*Jones v. State*,
   982 S.W.2d 386 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . 20

*Lane v. State*,
   933 S.W.2d 504 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . 33

*Lopez v. State*,
   990 S.W.2d 770 (Tex. App. – Austin 1999, no pet.). . . . . . . . . . . . . . . . 30

*Martinez v. State*,
   327 S.W.3d 727 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . 25, 37, 41

*McCleskey v. Kemp*,
   481 U. S. 279 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Montgomery v. State*,
   810 S.W.2d 372 (Tex. Crim. App. 1990) (op. on reh'g). . . . . . . . . . . . 25, 37, 41

*Mozon v. State*,
   991 S.W.2d 841 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . . . . . 26

*Newton v. State*,
   301 S.W.3d 315 (Tex. App. – Waco 2009, pet. ref'd). . . . . . . . . . . . . . 32, 33

*Ngo v. State*,
   175 S.W.3d 738 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . 55

*O'Brien v. State*,
   89 S.W.3d 753 (Tex. App. - Houston [1st Dist.] 2002, no pet. h.). . . . . . . . 58, 59

*Pena-Rodriguez v. Colorado*,
   15-606 (U.S. Mar. 6, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Prior v. State,*
    647 S.W.2d 956, 959 (Tex. Crim. App. 1963)............................. 31

*Pruitt v. State,*
    770 S.W.2d 909, 910 (Tex. App. – Fort Worth 1989, pet. ref'd)......... 38, 39

*Rice v. State,*
    333 S.W.3d 140 (Tex. Crim. App. 2011). ......................... 55, 56

*Robbins v. State,*
    88 S.W.3d 256 (Tex. Crim. App. 2002). ..................... 27, 31, 52

*Russell v. State,*
    155 S.W.3d 176 (Tex. Crim. App. 2005)............................ 33

*Salazar v. State,*
    562 S.W.2d 480 (Tex. Crim. App. [Panel Op.] 1978)................ 20, 21

*Saunders v. State,*
    913 S.W.2d 564 (Tex. Crim. App. 1995). ......................... 58, 59

*Scott v. State,*
    419 S.W.3d 698 (Tex. App. – Texarkana 2013, no pet.). ........... 20-22, 23

*Yates v. State,*
    941 S.W.2d 357 (Tex. App. – Waco 1997, pet. ref'd). .................... 25

*Uranga v. State,*
    330 S.W.3d 301 (Tex. Crim. App. 2010). ......................... 20

*Webb v. State,*
    232 S.W.3d 109 (Tex. Crim. App. 2007). ......................... 20

**Constitutional Provisions**

TEX. CONST. art. I., § 10. ........................................ 20

U.S. CONST. amend. VI. ........................................... 20

**Statutes**

TEX. CODE CRIM. PROC. art. 36.19. · · · · · · · · · · · · · · · · · · · · · · 58

TEX. CODE CRIM. PROC. art. 37.09(1). · · · · · · · · · · · · · · · · · · 55, 56

TEX. CODE CRIM. PROC. art. 38.37. · · · · · · · · · · · · · · · · · · · · · 27

TEX. CODE CRIM. PROC. art. 38.371. · · · · · · · · · · · · · · · · · · · · 27

TEX. PEN.CODE  § 6.03(c). · · · · · · · · · · · · · · · · · · · · · · · · · · 55

TEX. PEN.CODE  § § 12.42(e). · · · · · · · · · · · · · · · · · · · · · · · 59

TEX. PEN. CODE  § 12.43(e). · · · · · · · · · · · · · · · · · · · · · · · · 59

TEX. PEN.CODE § 22.01(a)(1). · · · · · · · · · · · · · · · · · · · · · · 54, 56

TEX. PEN.CODE § 22.02(b)(2)(B). · · · · · · · · · · · · · · · · · · · · 54, 56

**Rules**

TEX. R. APP. P. 38(i) . · · · · · · · · · · · · · · · · · · · · · · · · · · 24, 35, 40

TEX. R. APP. P. 44.2(b). · · · · · · · · · · · · · · · · · · · · · · · 33, 39, 42

TEX. R. EVID. 403.. · · · · · · · · · · · · · · · · · · · 25, 31, 36, 44

TEX. R. EVID. 404.. · · · · · · · · · · · · · · · · · · · 31, 36, 51, 52

TEX. R. EVID. 404(b).. · · · · · · · · · · · · · · · · · · 25, 26, 44, 52

TEX. R. EVID. 607. · · · · · · · · · · · · · · · · · · · · · · · · · · · · 38

TEX. R. EVID. 613.. · · · · · · · · · · · · · · · · · · · · · · 26, 35, 36

TEX. R. EVID. 802. · · · · · · · · · · · · · · · · · · · · · · · · · · · · 50

TEX. R. EVID. 803(2). · · · · · · · · · · · · · · · · · · · · · · · 41, 43

TEX. R. EVID. 803(3). · · · · · · · · · · · · · · · · · · · · · · · · · 41

TEX. R. EVID. 803(5). · · · · · · · · · · · · · · · · · · · · · 47, 50, 51

**TO THE HONORABLE COURT OF APPEALS:**

COMES NOW Appellant, Dwayne Uterral Hardeman and submits this brief on appeal from a conviction in the 35th Judicial District Court of Brown County, Texas, the Honorable Stephen Ellis, Judge Presiding.

<u>STATEMENT OF THE CASE</u>

Appellant was charged by indictment with family violence assault by impeding breath or circulation in violation of TEX. PEN. CODE §§ 22.01(a)(1), (b)(2), (b)(2)(B). (CR: 16). The State gave notice of its intent to seek enhanced punishment by alleging two prior sequential felony convictions. (CR: 42-43). Appellant pled not guilty and was tried by a jury. (RR7: 196). The jury found Appellant guilty of assault family violence by impeding breath or circulation. (RR10: 190; CR: 226). Appellant pled not true to the enhancement paragraphs. (RR10: 194). The jury found the enhancement paragraphs true and assessed punishment at life confinement. (RR11: 24; CR: 229). The trial court assessed punishment in accord with this verdict. (RR11: 27-28). Judgment was entered on August 25, 2016. (CR: 253-55). A motion for new trial was filed on September 9, 2016. (SCR). A motion for new trial hearing was held on October 11, 2016. (RR12). The trial court overruled Appellant's motion for new trial by written order on October 11, 2016. (SCR). Appellant gave timely notice of appeal on August 24, 2016. (CR: 248).

1

## STATEMENT ON ORAL ARGUMENT

Appellant requests Oral Argument, the evidence presented was subjected to complex and interrelated objections and arguments creating unique nuances. Consequently, counsel believes oral argument would assist this Court in resolution of these important matters

## POINTS OF ERROR

### POINT OF ERROR 1

THE TRIAL COURT ERRED WHEN IT REFUSED TO DECLARE A MISTRIAL AFTER IT FOUND A JUROR MADE A STATEMENT OF RACIAL BIAS BEFORE THE VENIRE, DENYING APPELLANT'S CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY.

### POINT OF ERROR 2

THE TRIAL COURT ERRED IN ADMITTING EXTRANEOUS OFFENSE EVIDENCE APPELLANT CHOKED MELISSA THROUGH LAKISHA.

### POINT OF ERROR 3

THE TRIAL COURT ERRED IN ADMITTING EXTRANEOUS OFFENSE EVIDENCE APPELLANT CHOKED MELISSA THROUGH MELISSA.

### POINT OF ERROR 4

THE TRIAL COURT ERRED IN ADMITTING EXTRANEOUS OFFENSE EVIDENCE APPELLANT WENT TO PRISON FOR ATTEMPTING TO ASSAULT MELISSA THROUGH MELISSA.

### POINT OF ERROR 5

THE TRIAL COURT ERRED IN ADMITTING EXTRANEOUS OFFENSE EVIDENCE APPELLANT WENT TO STATE JAIL FOR ATTEMPTED ASSAULT AGAINST MELISSA THROUGH HURT.

2

## POINT OF ERROR 6

THE TRIAL COURT ERRED IN ADMITTING EXTRANEOUS OFFENSE EVIDENCE, A JUDGMENT, REFLECTING APPELLANT WENT TO STATE JAIL FOR ATTEMPTED ASSAULT AGAINST MELISSA.

## POINT OF ERROR 7

THE TRIAL COURT ERRED BY ALLOWING THE STATE TO IMPEACH MELISSA AS A SUBTERFUGE TO ADMIT EXTRANEOUS OFFENSE EVIDENCE – MELISSA'S WRITTEN STATEMENT.

## POINT OF ERROR 8

THE TRIAL COURT ERRED BY ALLOWING THE STATE TO IMPEACH MELISSA AS A SUBTERFUGE TO ADMIT EXTRANEOUS OFFENSE EVIDENCE – LONDRIE'S ACCOUNT.

## POINT OF ERROR 9

THE TRIAL COURT ERRED BY ADMITTING LEE'S INTERVIEW WITH LAKISHA BECAUSE IT WAS HEARSAY AND NO EXCEPTION TO THE HEARSAY RULE APPLIES.

## POINT OF ERROR 10

THE TRIAL COURT ERRED BY ADMITTING EXTRANEOUS OFFENSE EVIDENCE APPELLANT CHOKED MELISSA WITHIN LEE'S INTERVIEW WITH LAKISHA.

## POINT OF ERROR 11

THE TRIAL COURT ERRED BY ADMITTING MORGAN'S CONVERSATION WITH LAKISHA BECAUSE IT WAS HEARSAY AND NO EXCEPTION TO THE HEARSAY RULE APPLIES.

## POINT OF ERROR 12

THE TRIAL COURT ERRED BY ADMITTING EXTRANEOUS OFFENSE EVIDENCE WITHIN MORGAN'S CONVERSATION WITH LAKISHA.

## POINT OF ERROR 13

THE TRIAL COURT ERRED BY ADMITTING HURT'S INTERVIEW WITH D. BECAUSE IT WAS HEARSAY AND NO EXCEPTION TO THE HEARSAY RULE APPLIES.

## POINT OF ERROR 14

THE TRIAL COURT ERRED BY ADMITTING EXTRANEOUS OFFENSE EVIDENCE WITHIN HURT'S INTERVIEW WITH D.

## POINT OF ERROR 15

THE TRIAL COURT ERRED IN DENYING A REQUEST FOR A LESSER INCLUDED OFFENSE OF ASSAULT BY BODILY INJURY.

## STATEMENT OF FACTS

Lakisha Anthony was nineteen years of age at the time of trial and in jail on a marijuana charge. (RR7: 254). Appellant was her stepfather, Melissa Hutson her mother, D. her middle sister, and J. her younger sister. (RR7: 254-55). On the day in issue, Lakisha was seventeen and becoming romantically involved with an adult female, her parents tried to stop this. (RR8: 61; RR10: 114-15). She recalled going to a park with Melissa, Melissa's friend, and her sisters. (RR7: 257-58). She took pills to get high, and did not recall if they ended up at home. (RR7: 258-59; RR8: 70-71).

Lakisha argued with Appellant over the pills, was disrespectful, and tried to run past Appellant to the road. (RR7: 263, 265). Appellant grabbed her shirt bottom and collar, but not hard, to prevent her run. (RR7: 264). Melissa said,

4

"'Stop, let her go.'" (RR7: 278). Appellant did not choke her. (RR7: 266, 278; RR10: 116). She ran down the street and was picked up by strangers in a truck. (RR7: 260-61). She did not recall telling them Appellant choked her (RR7: 260, 266); if she did, she lied out of anger. (RR8: 54-55). She did not recall ending up at the Law Enforcement Center (hereinafter "the Center") but had seen recording of herself there. (RR7: 259). She did not recall telling police Appellant choked her; based on the recording she did, lying because she was angry. (RR7: 267; RR8: 55).

The next day, Lakisha returned to the Center and spoke to Detective Robert Lee; she did not recall saying Appellant wrapped his hands around her throat and was "coming off" pills. (RR7: 269, 270, 271).

Days later, Lakisha spoke with Detective Doug Hurt. (RR7: 275-76; RR8: 52). That day, she called Lee and said she did not want to pursue charges and denied speaking with Appellant. (RR7: 276; RR8: 53). She had contact with Melissa but they did not discuss the incident. (RR7: 276-77).

She signed a statement and an affidavit of non-prosecution four months later. (RR8: 72, 75) (St. Ex. 1, 2). The statement says: she did not recall much because she took pills; Appellant stopped her run by grabbing her shirt; Melissa yelled for Appellant to release her; Appellant released her; and, she ran down the road. (RR8: 74). Lakisha felt responsible for getting Appellant into the instant situation. (RR7: 274). She denied and did not recall Appellant telling her while she

5

in jail, "If you just say you don't remember, they can't charge you with perjury." (RR8: 57-59).

Lakisha had seen Appellant choke Melissa. (RR8: 49). There was a time Melissa went to Belton, Lakisha denied Appellant choked Melissa before this and denied telling police this. (RR8: 49-51, 54). She did tell Lee Appellant choked Melissa, lying out of anger. (RR8: 51-52). She did not remember telling Hurt Appellant choked Melissa; if she did, she lied because she was mad. (RR8: 54). She would never have told a CPS caseworker she was afraid of Appellant or that Appellant would hurt Melissa, but possibly did. (RR8: 55-56).

*Melissa Hutson* did "not really" recall what happened. (RR8: 85, 88). Lakisha took pills, "act[ed] crazy," and tried to run. (RR8: 89-91). Melissa feared she would get hit in the road. (RR8: 92-93). As she ran, Appellant grabbed her shirt – not her neck. (RR8: 92-93, 158). Melissa told Appellant to "let her go and let me see if I can have any luck," Appellant let go; she did not recall if she told Appellant not to grab her the way he did. (RR8: 96,156). Asked why she would say this if Appellant was protecting Lakisha, Melissa said she exaggerated. (RR8: 157-58).

Lakisha ran and Melissa chased. (RR8: 96). Concluding she could not catch her, Melissa let her run. (RR8: 97). A stranger picked her up. (RR8: 97). Appellant followed. (RR8: 97). Melissa did not recall Lakisha later coughing and grabbing

6

her neck. (RR8: 158). She had no idea why Lakisha said Appellant choked her, but Lakisha was mad at Appellant. (RR8: 159). Melissa did not recall telling police she told Appellant not to touch Lakisha "that way." (RR8: 102).

Melissa denied ever being afraid of Appellant. (RR8: 102-03). In 2013, she left Appellant and went to Belton; she denied Appellant choked her and telling police he had. (RR8: 103). She had contact with law enforcement in Belton and refused to answer questions about a conversation with a Belton school resource officer. (RR8: 106-09). She did not remember reporting Appellant choked her and testified he did not. (RR8: 107-08). Melissa signed a false statement that Appellant choked her because she was trying to get back at Appellant for cheating. (RR8: 110, 150-51). In 2008, Appellant went to prison for attempting to assault her. (RR8: 153). She knew what it was like to be strangled. (RR8: 159).

*Deputy John Londrie* as a Belton school resource officer interacted with Melisssa in September 2013. (RR8: 162). She appeared upset, said she fled an abusive relationship, her boyfriend had choked her, his face looked like the devil, and the choking lasted about ten minutes. (RR8: 167). She asked about a protective order. (RR8: 164-67).

*D.*, Appellant's daughter, sixteen at trial, did not recall the day in issue but recalled going to the park. (RR8: 281, 283-84). Lakisha took pills and had a zombie look about her eyes; Appellant "got on to her" about it. (RR8: 284, 286-87,

7

320). Regarding the incident, D. did not see Appellant touch Lakisha but heard Melissa say "'Don't grab her like that." (RR8: 288, 293).[1] Lakisha told D. Appellant choked her but recanted days later. (RR8: 288, 290, 299). D. told police Appellant grabbed Lakisha's shirt and pulled it hard, Melissa told Appellant not to grab her like that, and Appellant cussed Melissa. (RR8: 298-99). D. lied, based upon what Lakisha said, when she reported Appellant put Lakisha in a choke hold. (RR8: 300-01). When Lakisha recanted, D. told Lakisha she had already been interviewed. (RR8: 301-02).

D. reported Appellant choking Melissa before they left to Belton. (RR8: 302). D. told the officer Appellant choked Melissa until she could not breathe but "[h]e doesn't do it anymore." (RR8: 304). D. did not recall reporting Appellant "always chokes people." (RR8: 305). D. reported when her parents argued, Appellant would choke Melissa. (RR8: 330). D. reported she did not think Melissa would be honest because she feared Appellant; this was based on what Lakisha told D. (RR8: 330-31). D. testified Lakisha said Appellant choked her and accused Melissa covering for Appellant after they were at the Center. (RR8: 331-32). D. recalled telling the police Appellant "tried to apologize every single day." (RR8: 307).

---

[1] D. admitted telling the prosecutor earlier that she was actually at her aunt's home. (RR8: 296). She lied because she "thought it was the truth, and then, [she] watched the video [of her interview]." (RR8: 297, 298).

*Jeff Davis* and *Morgan Wright*, an engaged couple, were the strangers that picked up Lakisha. (RR7: 212-37). They saw her sprinting and crying, and apparently saw Appellant and Melissa arguing outside a residence. (RR7: 214-17, 230-31). Davis pulled over. (RR7: 215). Lakisha ran to Davis's truck and said "He choked me. I need to get out of here . . . ." (RR7: 215, 235). Wright recalled Lakisha touched her neck and tried to clear her throat. (RR7: 233). She displayed no indicia of intoxication. (RR7: 217, 233). Lakisha entered the truck. (RR7: 220). A car backed out of the residence where the couple had been arguing and followed. (RR7: 220-21). Morgan said, "He is coming"; Lakisha acted more scared. (RR7: 220, 236). Davis called the Center and drove there. (RR7: 221). Lakisha asked to be taken to Early; Davis explained she was being taken to the Center. (RR7: 236-37). The car followed, Davis circled the Center parking lot until an officer arrived as instructed by police dispatch. (RR7: 221).

*Police Sergeant Troy Carroll* responded to the Center. (RR8: 175-76). Appellant said he followed because his daughter been picked up and said: "I didn't choke her"; Carroll had not mentioned choking. (RR8: 177). Appellant reported he argued with Lakisha, she walked away, he grabbed her by the back of the neck, she pulled away, he grabbed her shirt, Melissa intervened, and Lakisha walked away again; Melissa reported Appellant grabbed Lakisha by the back of the neck and she

9

told him not to handle her like that. (RR8: 180-81, 183-84). Lakisha did not appear out of control or high. (RR8: 185).

*Police Officer Stephanie Morgan* also responded, spoke to Lakisha, observed no indications she was high and observed no visible injuries. (RR9: 11-12, 16, 56, 68-69, 79). The situation was believed to be a discipline issue. (RR9: 79).

Morgan's in-car video was played. (RR9: 52); (St. Ex. 3) (recording labeled "Morgan"). The officer says "she says something about being choked he says I did not choke nobody." (St. Ex. 3 at 19:16:12-19). Lakisha says she took some pills and Appellant got mad. *Id.* at 19:17:37-40, 50-57. She tried to leave, and apparently said something to Appellant, and Appellant grabbed her and then (demonstrating) choked her. *Id.* at 19:18:10-22. Lakisha reported Appellant abused Melissa for about twelve years. *Id.* at 19:19:12-17. Lakisha was grabbing her collar. (RR9: 53). Lakisha says he should not choke her. (St. Ex. 3 at 19:20:00). Lakisha recounts Appellant choked and beat Melissa previously. (RR9: 54); (St. Ex. 3 at 19:23:13-30). Asked about the subject of the argument, Lakisha recounts Appellant believed she wanted to be with a girl but she just hated living with Appellant. (St. Ex. 3 at 19:29:45-47). During this section, Lakisha tells Melissa Appellant choked her; Melissa does not deny this. (RR9: 58-59); (St Ex. 3 at 19:45:13-55).

*Detective Lee* responded to a dispatch call the day after the incident, Lakisha's aunt called and said Lakisha was scared to go home due to further possible abuse by Appellant. (RR8: 217). Lee's interviewed with Lakisha was played. (RR8: 218-19, 228-29); (St. Ex. 3) (recording labeled "Lee"). It initially depicts Lee calling for a welfare check on Melissa and Lakisha's sisters. (RR8: 230). The next section discusses Lakisha's biological father. (RR8: 233); (St. Ex. 3 at 11:26:17-11:27:04). Then, Lakisha's background information is related. (RR8: 234); (St. Ex. 3 at 11:27:04 to 11:32:42).

At 11:30:53-55 she relates Appellant once popped her in the face. Lakisha discusses prior incidents of Appellant choking and punching Melissa and characterizes Appellant as controlling. (RR8: 235-36); (St. Ex. 3 at 11:33:58-11:36:49). She describes Appellant's emotional abuse of Melissa. (RR8: 237); (St. Ex. 3 at 11:36:49 to 11:45:05).

From 11:38:00 to 11:39:00 Lakisha admits she was on pills, Appellant ordered her to go home, she did not, Appellant grabbed the back of her neck, she broke free, and Appellant choked her. From 11:39:00 to 11:40:45 she recaps this story under Lee's questions and confirms she had pain from Appellant grabbing her neck. From 11:41:00 to 11:41:50 she confirms Appellant choked her, Melissa told him to stop, he stopped, and Lakisha ran. Then, Lakisha discusses going to relatives home after going to the Center, notes the earlier argument with Appellant

11

also concerned his threat to send her to live with his family and Appellant's work as a mechanic, and discusses her general unhappiness with Appellant. (RR8: 237) (St. Ex. 3 at 11:45:41 to 11:57:37). At 11:54:40 to 11:55:10 she noted she was afraid Appellant would hurt Appellant over her. Lakisha then says D. was outside and Melissa saw. (RR8: 238); (St. Ex. 3 at 11:57:37 to 11:59:04).

During the final portion, Lakisha is alone with her grandmother. Lakisha says she does not want to return home and it would be worse, nothing would change, she currently hated Appellant, discusses her friendship with a lesbian and that she had the same issue in that her mother also beat her father, also, she admits this person had attacked her. (RR8: 239) (St. Ex. 3 at 12:06:11 to 12:14:05).

Lee spoke with Lakisha by phone September 10, 2014, she did not want to pursue charges; she had spoken with Appellant and he was only trying to protect her from running into the road. (RR8: 242-44).

*Police Detective Kimberly Holland* was dispatched to check on Melissa's welfare the day after; Appellant said he grabbed Lakisha by the neck. (RR8: 274-76).

*Detective Hurt* interviewed Lakisha and D. at school four days after the incident. (RR9: 85, 87-88, 180). Hurt's interview with D. was played. (RR9: 179); (St. Ex. 11). D. said Lakisha acted high and admitted taking Melissa's Xanax,

12

Melissa got onto her for this. *Id.* at 00:25, 01:11-01:19. Melissa told Appellant about Lakisha taking the Xanax. *Id.* at 02:06-02:08.

At home, when Lakisha got out of the car she was going to walk away. *Id.* at 02:23-24. Appellant grabbed her shirt and put her in a chokehold. *Id.* at 02:25-34; 15:25-28. Appellant pulled her shirt hard, knotting it. *Id.* at 03:23-39. Lakisha said she could not breathe. *Id.* at 03:45-52. D. saw this. *Id.* at 03:54-56. Melissa said "you are not going to grab my daughter like that." *Id.* at 02:25-34. Appellant let go. *Id.* at 05:10-15. Appellant cussed Melissa. *Id.* at 02:55-3:17. A car drove by, D. guessed they saw the choking, and they picked Lakisha up. *Id.* at 02:35-41.

Appellant had never choked the kids before. *Id.* at 05:49-54. Appellant had choked Melissa before. *Id.* at 05:55-59. Lakisha told D. she was scared Appellant would hurt Melissa or her. *Id.* at 06:21-35. Melissa had seen Appellant hit Melissa. *Id.* at 06:59-07:03. It had been five or six months since Appellant assaulted Melissa. *Id.* at 06:34-06:49.

In this incident, Appellant held Melissa in a chokehold and she could not breathe, the police came. *Id.* at 07:09-17. Appellant punched and choked Melissa this time. *Id.* at 12:02-06. The next day Melissa and her daughters went to Belton. *Id.* at 07:18-24. They later returned because Appellant harassed Melissa, apologized, and they began talking again. *Id.* at 07:29-57. Appellant found them in

13

Belton; D. believed they returned because Melissa was scared of Appellant. *Id.* at 07:58-08:47.

D. recalled that when they followed the truck, Melissa said Appellant deserved to go to jail for putting his hands on Lakisha. *Id.* at 13:32-57. Asked if Melissa would admit this, D. recalled that the night after the incident Melissa went home to Appellant and then called Lakisha and tried to convince her Appellant did not choke her. *Id.* at 13:59-14:42. D. also said Appellant put something in Lakisha's head that he did not choke her and he told her he was sorry and did not mean to choke her he was just trying to prevent her from running away. *Id.* at 14:54-15:14.

Recalling past abuse, D. said Appellant usually hit Melissa on the face and always grabbed on her neck; Melissa would try to tell the police what happened but was scared of what would happen when Appellant would get out of jail. *Id.* at 17:43-18:12.

Hurt testified he learned Appellant went to state jail for attempted assault family violence against Melissa in 2006 and the attendant judgment was admitted. (RR9: 90-92; St. Ex. 27).

Hurt reviewed a jail phone call between Appellant and Lakisha from June 20, 2016; it was admitted. (RR9: 93, 104). In it, *inter alia*, Appellant is heard to say: "You they cannot do anything to you just cause you do not remember, you

14

were under the influence . . . they cannot charge you for perjury if you didn't know what you did . . . ." (St. Ex. 46).

*Jessica Braziel*, a licensed professional counselor and director of a women's shelter testified that if a child's mother was being abused there is a forty to forty-five percent chance the child would be abused as well. (RR9: 228, 237). The likelihood of abuse is higher for a non-biological child. (RR9: 237). Recantation by children is common. (RR9: 237-38). Gaslighting as a form of emotional abuse/control where someone denies something happened to make the victim question their own mental health. (RR9: 243). Braziel listened to the testimony of Lakisha, Melissa, and D; she reviewed records and listened to jail phone calls between Appellant and Lakisha. (RR9: 243-44). Braziel noted Lakisha reported being later told what she reported did not happen "which is what she then . . . came back and reported to police." (RR9: 244-45). Braziel's believed: Lakisha appeared scared and reluctant in court; Melissa was scared and hesitant to say anything against Appellant; and, D. appeared to be flippant and this can be a protective measure. (RR9: 246-48, 250).

*Child Protective Services supervisor Angie Cross* testified CPS investigator Mike Algieres investigated the allegation that Appellant abused Lakisha and assisted Hurt in interviewing Lakisha and D. (RR10: 67-68). CPS "[r]uled out emotional and physical abuse of Lakisha" by Appellant. (RR10: 73).

15

*Center of Life Resources (formerly MHMR) Caseworker Jennifer Holster* worked with Lakisha for five months after the date of the alleged offense. (RR10: 125). Lakisha told Holster she was high, she told the police she was choked, and that she did not remember anything and that did not happen. (RR10: 127).

## SUMMARY OF ARGUMENT

**Point of Error 1:** The trial court erred by not declaring a mistrial. A juror, later removed for bias, made a remark of virulent racial bias in the jury selection room that was overheard by at least two people yet only one came forward. The court did not allow inquiry regarding how far the contamination spread. Thus, it cannot be said Appellant received a trial by an impartial jury.

**Points of Error 2-6:** The trial court admitted a torrent of extraneous offense evidence that Appellant choked complainant's mother through various witnesses many of whom denied this took place. This was improper use of the witnesses as strawmen and use of extraneous offense for the forbidden purpose of proving character conformity. It was also unfairly prejudicial. This denied Appellant's right to a fair trial.

**Points of Errors 7 & 8:** The trial court allowed the State to impeach complainant's mother via extraneous offense evidence. This was improper use of the witness as a strawman and constituted the erroneous admission of extraneous offense evidence to prove character conformity, denying Appellant a fair trial.

16

**Points of Error 9-14:** The trial court admitted recordings of law enforcement interaction with complainant and her second youngest sister under the rubric of recorded recollection. These exhibits were rank hearsay and contained extraneous offense evidence. The improper admission of this evidence denied Appellant a fair trial because the State was allowed to use these witnesses as strawmen and try Appellant for an extraneous offense

**Point of Error 15:** The trial court erroneously refused to submit a lesser included offense of assault. The requested charge was proven by less than all of the elements of the charged offense and was supported by evidence Appellant directly or indirectly touched complainant's neck, causing her pain, but did not choke her. Because the jury was left with only the options of convicting for the charged offense or acquitting Appellant suffered harm.

## ARGUMENT

### Point of Error 1, Restated

**The trial court erred when it refused to declare a mistrial after it found a juror made a statement of racial bias before the venire, denying Appellant's Constitutional right to an impartial jury.**

Sub rosa, Appellant's counsel stated unselected juror and local business owner C. informed him and provided an affidavit that during a break a juror said the case was "going to be about a bunch of niggers and Mexicans." (RR9: 109-110) (Def. Ex. 7). Appellant moved for a mistrial. (RR9: 110, 112, 116).

17

In chambers, the trial court informed the suspected juror, J.,[2] of the allegation. (RR9: 116-17). J. denied it, denied race would make a difference, and affirmed the accusation would not affect her ability to be fair and impartial. (RR9: 118, 120, 123). Regarding C., she replied the only C. she knew was "the one that we were all three standing there" and described her. (RR9: 119-121). J. was sent back to the jury and instructed not to discuss the matter. (RR9: 122).

In chambers, C. admitted authorship of Def. Ex. 7 but did not hear a complete sentence as recited but rather "Probably just a bunch of Mexicans and niggers." (RR9: 139-140). And, a woman to the juror's right replied: "tell them, because you will get off." (RR9: 58). C. later identified the juror by seat; the parties agreed she was J. (RR9: 186-88).

Appellant moved for a mistrial because a juror had said racial slurs to another venire member and might have made similar comments. (RR9: 190-91). Appellant noted Appellant was African-American, Melissa Caucasian, and the alleged victim biracial, and so, "there is a high possibility under these circumstances for racism." (RR9: 191-92).

The State argued C. was not credible because she said she had no contact with the juror but J. testified she met C. and described her and C. admitted her affidavit was incorrect. (RR9: 192-93). The State noted C. said the slurs were made

---

[2] Out of caution, Appellant redacted the jurors' full names.

18

while the Judge was taking excuses before any jurors were given numbers and that numbers were not given until the panel was reduced to fifty. (RR9: 193). The State argued neither Appellant nor his counsel were present. (RR9: 193). Counsel replied Appellant was present outside the courtroom with "his African American brethren." (RR9: 193). Alternatively, the State asked that the juror be removed because there was no indicia of juror contamination. (RR9: 194).

The trial court denied the motion for mistrial and stated it had no reason to doubt C. (RR9: 196). Appellant moved to strike J. from the jury as she was "incapable of being fair and impartial" and requested to voir dire the remaining jurors on whether they heard any racist comments.[3] (RR9: 196-97). The trial court denied the request. (RR9: 197). The court ruled J. was disqualified "on the basis of a showing of bias or prejudice against a party . . . based upon the more credible testimony," and would remove her and seat an alternate. (RR9: 203-04).

*Standard of Review & Applicable Law*

A trial court's ruling on a motion for a mistrial is reviewed under an abuse of discretion standard, viewing the record in the light most favorable to the trial court's ruling and upholding that ruling if it was within the zone of reasonable disagreement. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010). A trial court abuses its discretion only when no reasonable view of the record could

---

[3] Later, in a new trial hearing, counsel testified he did not make such request. (RR12: 15-16, 10).

support the court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). When reviewing a trial court's decision regarding potential jury misconduct, a reviewing court defers to the trial court's resolution of the historical facts and determinations concerning credibility and demeanor. *Gamboa v. State*, 296 S.W.3d 574, 584 (Tex. Crim. App. 2009).

Criminal defendants have the right at trial by an impartial jury under both the Sixth Amendment and Article I, Section 10 of the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I., § 10; *Uranga v. State*, 330 S.W.3d 301, 304 (Tex. Crim. App. 2010). The protection under the Texas Constitution is identical to that of the Federal Constitution. *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998).

For conciseness, Appellant submits in part the masterful framework set forth in *Scott v. State*:

> First, *Salazar v. State* held that a trial court erred in denying a mistrial when a juror had withheld that he had been a fact witness in a similar case. *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978). Because the information was material and the defendant was "without fault or lack of diligence," the withheld information prevented the defendant from properly exercising his peremptory challenges. *Id.* at 482–83.
>
> . . . .
>
> Fourth, the Texas Court of Criminal Appeals held that a defendant failed to exercise diligence when a juror misrepresented an answer on her written juror questionnaire but the defendant failed to orally question the juror. *Gonzales v. State*, 3 S.W.3d 915, 916 (Tex. Crim. App. 1999). . . .

The final cases concerned an appeal that was heard by this Court. In *Franklin I*, this court held that because counsel had failed to perfect a bill of exceptions, it [419 S.W.3d 702]could not determine whether the information withheld by the juror was material and affirmed a conviction. *See Franklin v. State*, 986 S.W.2d 349, 355 (Tex. App. - Texarkana 1999), *rev'd*,12 S.W.3d 473, 476 (Tex. Crim. App. 2000). When questioned by the trial court, the juror testified that her daughter was in the same Girl Scout troop as the victim and that the juror was an adult leader in that troop. *Id.* at 352. The juror, nevertheless, testified that she could be fair and impartial. *Id.* The trial court then denied the defense's request to question the juror further. *Id.* The Texas Court of Criminal Appeals reversed in *Franklin II*, reasoning that counsel had exercised due diligence and preserved error by requesting to examine the juror, stating what questions he would have asked, and opining that he would have exercised a peremptory strike. *Franklin v. State*, 12 S.W.3d 473, 476–77 (Tex. Crim. App. 2000). Reviewing this Court's opinion on remand, the Texas Court of Criminal Appeals affirmed in *Franklin III* this Court's conclusion that reversible error occurred. *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004). *Franklin III* observed that the trial court prevented proper development of the record, that the relationship between the juror and the victim's family had a tendency to show bias, and that the record did not establish the error to be harmless beyond a reasonable doubt. *Id.* at 355–56.

Collectively, these cases establish the following standards. 1. "Where a juror withholds material information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury." *Salazar*, 562 S.W.2d at 482. 2. "[T]he defendant must show that the juror withheld material information during voir dire, and the information is withheld despite due diligence exercised by the defendant." *Franklin*, 138 S.W.3d at 355–56. 3. "[T]he good faith of a juror is largely irrelevant when considering the materiality of information withheld." *Franklin*, 12 S.W.3d at 478. 4. Although the defendant is not required to show actual bias, the information concealed by the veniremember must possess a tendency to show bias. *Franklin*, 138 S.W.3d at 356; *see* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006). 5. A defendant must establish both that error took place and that the error resulted in harm. *Gonzales v. State*, 3 S.W.3d

915, 917 n. 2 (Tex. Crim. App. 1999). Only if error resulted in harm would a new trial be warranted. *Id.* . . .

*Scott v. State*, 419 S.W.3d 698, 702 (Tex. App. – Texarkana 2013, no pet.).

## *Application*

Within the ambit of the *Scott* framework, the record reveals Appellant is African-American. (RR9: 191-92). Thus, on its face the remark is evidence of a virulent bias against Appellant. Appellant exercised due diligence by disclosing the remark (RR9: 109-110); requesting a mistrial (RR9: 116, 190-91), and asking to examine the remaining jurors for contamination. (RR9: 196-97). Faced with contradictory accounts, the trial court concluded the more credible evidence was the remark was made. (RR9: 196, 203-04). It necessarily determined the racially biased remark was made aloud in the courtroom.

J. was sent back to the jury after confrontation and instructed not to mention the matter. (RR9: 122). The trial court's determination that she was biased against Appellant and not credible (RR9: 203-04) casts severe doubt on the notion that she followed the trial court's instructions. C., necessarily determined credible by the court, testified another venire member replied to the aloud remark. (RR9: 58). Thus, at least one other venire member heard and secreted this bias this from the court. Because the trial court would not allow further inquiry (RR9: 196-97), it is

22

unknown if the other jurors were contaminated by remark made out loud in court or by talk with J. before or after confrontation.

Thus, within the framework of *Scott v. State, supra,* Appellant has shown: (1) J. and at least one other venire member secreted the bias from the trial court, preventing seating of an impartial jury; (2) Appellant acted with due diligence; (3) the trial court, by finding J.'s denial not credible, tacitly determined she was not acting in good faith (and re-exposed her to the other jurors after confrontation); (4) the remark is irrefutable evidence of a virulent bias against Appellant; and, (5) Appellant was not allowed to question the remaining jurors to determine how far the contamination and its concealment spread, or if J. followed the court's instructions.

The jury is to be "a criminal defendant's fundamental 'protection of life and liberty against race or color prejudice.'" *Pena-Rodriguez v. Colorado*, 15-606, *Slip. Op.* at 8 (U.S. Mar. 6, 2017) (citing *McCleskey* v. *Kemp*, 481 U. S. 279, 310 (1987)). There is no assurance the jury was free from the dismissed juror's racial bias. At least two people concealed this virulent bias from the trial court, and so, there is no reason to believe the jury discharged its duty and there remains the question of how far the contamination crept. The trial court abused its discretion in not declaring a mistrial because there is zero assurance this jury was free from prejudice under these circumstances as the trial court refused to allow the inquiry

23

to proceed. Based upon these reasons Appellant was denied his right to an impartial jury by the trial court's failure to declare a mistrial. Appellant's instant point of error should be sustained and Appellant's conviction should be reversed.

## Point of Error 2, Restated

**The trial court erred in admitting extraneous offense evidence Appellant choked Melissa through Lakisha.**

## Point of Error 3, Restated

**The trial court erred in admitting extraneous offense evidence Appellant choked Melissa through Melissa.**

## Point of Error 4, Restated

**The trial court erred in admitting extraneous offense evidence Appellant went to prison for attempting to assault Melissa through Melissa.**

## Point of Error 5, Restated

**The trial court erred in admitting extraneous offense evidence Appellant went to state jail for attempted assault against Melissa through Hurt.**

## Point of Error 6, Restated

**The trial court erred in admitting extraneous offense evidence, a judgment, reflecting Appellant went to state jail for attempted assault against Melissa.**

Because the substance of the extraneous offense evidence, the applicable law, and the harm analysis are functionally equivalent, Appellant argues these issues jointly for conciseness. TEX. R. APP. P. 38(i).

*Standard of Review*

24

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion when its decision is "within the zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

### Applicable Law

Extraneous offense evidence is generally inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b). But extraneous offenses may be admitted for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

Rule 403 provides relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. "Unfair prejudice" arises from the tendency of evidence "'to suggest a decision on an improper basis, commonly, an emotional one.'" *Montgomery*, 810 S.W.2d at 389 (citation omitted). When a trial court overrules a Rule 403 objection, the trial court is assumed to have conducted a Rule 403 balancing test and determined the evidence was admissible. *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App. – Waco 1997, pet. ref'd). A reviewing court measures the trial court's balancing determination against the relevant criteria by which a Rule 403 decision

25

is made. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). Rule 403 analysis includes balancing: (1) the inherent probative force of the proffered item of evidence; (2) the proponent's need for that evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and, (6) the likelihood that presentation of the evidence will consume an inordinate amount of time. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

### Evidence Concerning Point of Error 2: Lakisha

The State proffered Lakisha made statements about extraneous acts Appellant committed against Melissa. (RR7: 283-84, 286). In Lee's interview she said Appellant shot at, punched, and strangled Melissa; and Lee ordered a welfare check for Melissa. (RR7: 283-85). Appellant objected under TEX. R. EVID. 404(b) and 403. (RR7: 286-87). The State argued it was admissible for 404(b)(2) purposes. (RR7: 287-88).[4] Questioned pursuant to TEX. R. EVID. 613, Lakisha admitted she told Lee Appellant shot at Melissa, denied seeing it and seeing Appellant punch Melissa, and did not remember reporting Appellant strangled Melissa. (RR7: 293-96).

---

[4] The court carried the objections and ordered proffer of remaining evidence. (RR7: 289). Because the Hurt interview with Lakisha was ultimately not admitted, Appellant omits the discussion concerning it save to note Appellant additionally also objected the State cannot open its own 404(b) door. (RR7: 292).

The State contended: (1) Lakisha was afraid to testify truthfully because of Appellant's extraneous acts; (2) the likelihood of strangulation "increases when you see that the commonality of what he does" to Melissa (RR8: 8-11) (relying upon TEX. CODE CRIM. PROC. ANN. art. 38.371, 38.37); and, (3) Lakisha was thus lying to protect Melissa. (RR8: 16). The State noted it had other evidence of the incidents and an expert to "explain the dynamics." (RR8: 11-12). Later, the State confirmed Lakisha, Melissa, and D. had recanted, and so, its need for the extraneous offense evidence was great. (RR8: 28).

Appellant responded, *inter alia*, that article 38.371 evidence concerns the relationship between Appellant and Melissa, not Appellant and Lakisha. (RR8: 19). Also, 38.371 contemplates 404(b) exclusions. (RR8: 19). Appellant argued he had done nothing more than plead guilty and so had not put his intent in issue pursuant to *Robbins v. State*, 88 S.W.3d 256, 261 (Tex. Crim. App. 2002). (RR8: 23). Appellant noted the line of cases that the when the State knows in advance its witness would not testify the offense was committed, this is to be considered by the court in determining the "propriety of the State's position" because they were basically setting up their own straw man. (RR8: 32). *See, e.g., Hughes v. State*, 4 S.W.3d 1, 4-5 & n.4 (Tex. Crim. App. 1999).

The trial court denied admission of the shooting incident, and admitted the "similar incidents with the mother concerning the alleged strangulation" finding:

27

[W]hen you apply both the 404(b), the balancing test there, as well as the additionally articulated statutory provisions of 38.371 . . . I find that, on balance, that this -- the evidence of these other instances, in particular, at this time, would be evidence of relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense in this case, and including testimony or evidence regarding the nature of the relationship between the Defendant and his daughter, the alleged victim here. . . . I find that the State's evidence at this point, as articulated and proffered in their case in chief, is relatively weak. Their need, therefore, is great . . . . . The similarity of the extraneous conduct to the charged offense, as articulated in the State's proffer about the two other incidences of family violence in particular.

(RR8: 35-37). Redactions were discussed. (RR8: 41). Appellant objected to the recordings as hearsay and denial of confrontation. (RR8: 41).

Before the jury, the trial court instructed the jury to limit its consideration of extraneous offense evidence to the issue of Appellant's intent, absence of mistake or lack of accident in the charged offense and for no other purpose. (RR8: 49). Lakisha testified she saw Appellant choke Melissa. (RR8: 49). Lakisha denied Appellant choked Melissa before they left for Belton. (RR8: 49-50). Lakisha denied talking to police about this, did not remember telling Lee Melissa got choked but agreed she told Lee this, and said she lied in anger. (RR8: 50-54). She did not remember telling Hurt Appellant strangled Melissa and if she did she lied. (RR8: 54). Lakisha would never have told a CPS caseworker she was afraid of Appellant or that Appellant would hurt Melissa, but she possibly did. (RR8: 55-56).

*Evidence Concerning Points of Error 3, 4: Melissa*

Melissa testified that in 2013 she left Appellant and went to Belton; she denied Appellant touched her in any way or choked her and denied telling law enforcement that he had. (RR8: 103). Appellant objected under rules 404(b) and 403; the trial court overruled Appellant and afforded counsel a running objection. (RR8: 104-05). Melissa had contact with law enforcement in Belton but refused to answer questions regarding details of this contact. (RR8: 106-09). Melissa refused to answer if she reported she: was choked and the details of such; was afraid Appellant would find her and her daughters; fled to get away from Appellant; was concerned for her and her daughters' safety; and, she feared Appellant would use her daughters to get back to her. (RR8: 106-08). Melissa said she could not have reported Appellant choked her because he did not. (RR8: 108).

The State asked if Appellant went to prison for assaulting Melissa. (RR8: 151). The court instructed the jury to limit its consideration of extraneous offense evidence to rule 404(b)(2) purposes. (RR8: 152). Melissa agreed Appellant went to prison for attempting to assault her in 2008. (RR8:153).

*Evidence Concerning Points of Error 5, 6: Hurt*

Detective Hurt was asked if Appellant went to state jail for attempted assault family violence against Melissa. (RR9: 89-90). Appellant's 404(b), 403, and hearsay objections were overruled. (RR9: 90). Hurt testified this was true. (RR9:

29

90). Appellant made the same objections to St. Ex. 27, the attendant judgment, the trial court overruled the objections and admitted it. (RR9: 90-92).

*Error*

The trial court's ruling admitting extraneous choking of Melissa through Lakisha's and Melissa's direct testimony, attendant conversations with law enforcement, and Appellant's prior conviction violated TEX. R. EVID. 404. The complained-of evidence here was a domestic violence assault of a man against a woman, a per se crime of moral turpitude. *Lopez v. State*, 990 S.W.2d 770, 778-79 (Tex. App. – Austin 1999, no pet.). In addition to that, Appellant was charged with another crime of moral turpitude for allegedly choking his female stepdaughter. (CR: 16). Thus, on its face, admission violated rule 404 because it was offered to prove character conformity.

Regarding an applicable rule 404(b) rationale to justify admission such as intent, Appellant notes he did not go beyond his not guilty plea to place his intent in issue for instance, by engaging in vigorous cross-examination of the eyewitnesses. He did not have to, they all denied Appellant strangled Lakisha. (RR7: 266, 278; RR10: 116) (Lakisha); (RR8: 158) (Melissa); (RR8: 288) (D. denying she saw Appellant touch Lakisha); (RR8: 301) (D. recalling Lakisha recanted). Thus, within the ambit of *Robbins v. State*, his intent was not in issue and admission of this evidence was an abuse of discretion in violation of TEX. R.

30

EVID. 404. 88 S.W.3d at 261. Nor was it admissible to disprove a theory of accident, Appellant's defense was that he did not choke Lakisha, not that he accidentally choked her. *Cf. Prior v. State*, 647 S.W.2d 956, 959 (Tex. Crim. App. 1963) (other acts of exposure by defendant to disprove accident may be pointless where defendant has not claimed accident).

The trial court's ruling also violated TEX. R. EVID. 403 because its unfair prejudicial impact outweighed any probative value. Concerning the evidence's inherent probative force, Appellant's defense rested largely upon the eyewitness's denial that he choked Lakisha (RR7: 266, 278; RR8: 158, 288, 301; RR10: 116) and the absence of injury. (RR9: 16, 68-69, 79). Because the extraneous offense evidence indicated Appellant choked Melissa the only arguable probative value was to suggest Appellant had a propensity to choke females. Thus, the first factor somewhat favors exclusion.

Regarding the State's need for the evidence, while there was no direct physical evidence save Wright's testimony of throat irritation would serve as circumstantial evidence. (RR7: 233). Nor was this a one-witness case but rather there were three eyewitnesses. To be sure, as complained-of throughout the brief the State was erroneously allowed to introduce interviews of each containing statements Appellant choked Lakisha and voluminous evidence Appellant choked Melissa (sometimes for impeachment only) thus using the eyewitnesses as

31

strawmen. (St. Ex. 3, St. Ex. 11; St. Ex. 4A; St. Ex. 46). Thus, unlike one-witness cases, the State's need was not considerable and this factor weighs against admission. *Cf. Newton v. State*, 301 S.W.3d 315, 320 (Tex. App. – Waco 2009, pet. ref'd) (finding trial court could regard State's need for extraneous-offense evidence was "considerable" as there was no physical evidence and no eyewitnesses to corroborate the complainant's account). So, there was no need for this evidence for the State to prove its case and this factor favors exclusion.

Regarding the third factor, the tendency of the evidence to suggest decision on an improper basis, on its face this evidence had a powerful tendency to do just that. While the eyewitnesses denied the offense. (RR7: 266, 278; RR8: 158, 288, 301; RR10: 116) and the jury was confronted with their earlier contradictory accounts. (St. Ex. 3, 11). With the evidence in such equipoise the danger the jury would use the extraneous offense improperly for propensity purposes was profound. Thus, this evidence possessed a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of spousal abuse.

Precautions were taken to limit decision on an improper basis at the time of Lakisha's testimony, for part of Melissa's testimony, and in the charge. (RR8: 49, 152); (CR: 221). Therefore, the third factor does not favor exclusion. *Cf. Newton*, 331 S.W.3d at 320. Concerning the tendency of the evidence to confuse or distract

32

the jury, as both Lakisha and Melissa's testimony was not straightforward in that they disavowed the truth of their prior statements. Nor was it directly relevant to the central issue – whether Appellant choked Lakisha. Therefore, the evidence was inherently confusing. The evidence had a tendency of evidence to be given undue weight on other than emotional grounds-character conformity; thus the fifth factor cuts against admission. The sixth factor favors exclusion because both lines of testimony required some time, constituting about fifteen pages in a record where the jury spent substantial time out of the courtroom. (RR8: 50-56, 103-09, 151-53); *cf. Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (testimony amounted to less than a fifth of trial testimony). The balance of the factors weighed against admission, the trial court abused its discretion by admitting this evidence because it was substantially more prejudicial than probative.

*Harm*

Violations of evidentiary rules are non-constitutional errors that will be disregarded unless an appellant's substantial rights were affected. *See* TEX. R. APP. P. 44.2(b); *see, e.g., Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005). In applying this test, the reviewing court examines the record in its entirety and not the error in isolation. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

There were no visible injuries. (RR9: 16, 68-69, 79). The complainant and the eyewitnesses, Melissa and D. all denied in court that Appellant committed the offense charged. (RR7: 266, 278; RR8: 158, 288, 301; RR10: 116) (Lakisha).The State knew all three recanted (RR8: 28) but used them as strawmen to introduce prior recorded interviews and documents concerning each (St. Ex. 3, St. Ex. 11; St. Ex. 4A; St. Ex. 46) to: establish their original claim Appellant choked Lakisha; try Appellant for the extraneous choking of Melissa; and attack the credibility of their own strawmen witnesses. Thus, the trial court's rulings transformed Appellant's trial into a trial regarding the extraneous choking of Melissa, yielding a torrent of extraneous offense evidence. (RR8: 49) (Lakisha's account); (St. Ex. 4A) (RR8: 150) (Melissa's written statement Appellant choked her admitted only for impeachment); (RR8: 162-68) (Londrie's testimony Melissa said Appellant choked her, admitted only for impeachment); (RR8: 302-05, 330-35) (D.'s account); (RR9: 89-92) (Hurt's account).

The erroneous admission of extraneous offense evidence was part and parcel of the first of the two prongs of the State's case: (1) trying Appellant based upon extraneous chokings of Melissa; and, (2) using Lakisha, Melissa, and D. as "strawmen." The error in admitting this testimony clearly affected Appellant's substantial rights as it was part and parcel of a trial strategy built upon inadmissible evidence. Thus, when considered in context of the entire trial it cannot be said that

34

the error is harmless because Appellant in no way received a fair trial. Appellant's second, third, fourth, fifth, and sixth points of error should be sustained, and Appellant's conviction should be reversed.

## Point of Error 7, Restated

**The trial court erred by allowing the State to impeach Melissa as a subterfuge to admit extraneous offense evidence – Melissa's written statement.**

## Point of Error 8, Restated

**The trial court erred by allowing the State to impeach Melissa as a subterfuge to admit extraneous offense evidence – Londrie's account**

The extraneous offense evidence, applicable law, application are functionally equivalent so Appellant argues these issues jointly for conciseness. TEX. R. APP. P. 38(i).

### *Melissa's Written Statement*

Melissa said State's Exhibit 4 was a false statement she signed. (RR8: 110). The State offered it to impeach her. (RR8: 111). Appellant objected to hearsay and no proper TEX. R. EVID. 613 foundation. (RR8: 111). The State argued: article 38.371, it was not being offered for the truth of the matter asserted but under 613 for impeachment, it would tend to show the violent acts Appellant committed, and it was a statement against interest and shows aggravated perjury. (RR8: 111-12). The court admitted it under 613(a). (RR8: 113). Appellant objected under 404(b) and 403 and requested a limiting instruction. (RR8: 113).

35

The trial court entertained further argument and voir dire of Melissa sub rosa. (RR8: 114ff). Appellant argued the State knew it could not prove its case and was trying to rely on evidence of prior misconduct to prejudice the jury, objected under 404 and 403, and argued it is improper to impeach a witness with a third party's criminal record. (RR8: 126-28). The State asked St. Ex. 4 be admitted under 404 to show Melissa's motive to lie; the Court noted limiting instruction under 404 and 613 would conflict; and the State argued that if the court ruled it was not admissible under 404 then it should be admitted under 613. (RR8: 131-32).

After recess, Appellant objected under 404, hearsay, and improper predicate under 613. (RR8: 135). If admitted under 613, Appellant sought a limiting instruction. (RR8: 135). The court said it would admit the statement to impeach the witness under 613, would give a limiting instruction, and granted Appellant's request to redact the last sentence. (RR8: 134, 136-37).

St. Ex. 4A was admitted with a credibility limiting instruction given to the jury. (RR8: 150). Melissa testified she falsely wrote Appellant put his hands around her neck and choked her and she could not breathe and thought this was the end. (RR8: 150-51).

### Londrie

Deputy John Londrie, as a school resource officer at Belton High School, interacted with Melisssa September 10, 2013. (RR8: 162-63). Appellant objected

to relevancy, the State argued the evidence was relevant to impeach of Melissa, Appellant requested an impeachment limiting instruction, and it was given. (RR8: 163-64). Londrie was radioed to the counseling center by a counselor; Melissa appeared upset like she had been crying. (RR8: 164). The State asked what Melissa said upset her; Appellant objected to hearsay and denial of confrontation. (RR8: 164). The State responded it was not offered for the truth of the matter asserted and Hutson testified. The trial court overruled the objection. (RR8: 165). Melissa said she fled Brownwood because she was in an abusive relationship with her boyfriend, was concerned for her safety, and asked how to get a protective order, and he had choked her with two hands cutting off her circulation. (RR8: 165-66). Melissa said his face looked like the devil when he was strangling her. (RR8: 167). The assault lasted about ten minutes. (RR8: 167). He suggested she park her vehicle at the police station where there was surveillance for safety. (RR8:167-68).

*Error*

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *Martinez*, 327 S.W.3d at 736. A trial court does not abuse its discretion when its decision is "within the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391.

A witness may be impeached by either party. TEX. R. EVID. 607. However, the State may not call a "strawman" whom it knows to be hostile for the primary

37

purpose of eliciting otherwise inadmissible impeachment evidence. *See Hughes,* 4 S.W.3d at 4-5 & n.4. A trial court abuses discretion when it allows the State to offer "impeachment evidence for the primary purpose of placing evidence before the jury that [is] otherwise inadmissible. *Id.*; *Barley v. State,* 906 S.W.2d 27, 37 n.11 (Tex. Crim. App. 1995) ( in the strawman cases, the witnesses had *"already recanted"* and thus "the State could be charged with 'knowing' that the witness would do the same in their case and thus having the subjective *primary* intent of placing otherwise inadmissible substantive evidence before the jury"). Such subterfuge is impermissible. *Pruitt v. State,* 770 S.W.2d 909, 910 (Tex. App. – Fort Worth 1989, pet. ref'd). This happened here.

The State knew all three eyewitnesses (including Melissa) recanted (RR8: 28) but the trial court's rulings allowed it to call Melissa, use her written statement, and use Londrie solely to "impeach" her with Appellant's inadmissible extraneous offense evidence. Notably, the State revealed its purpose saying Melissa: "doesn't want to answer it because her answers to it would be *hurtful to the Defendant* and would be something that would *tend to show the violent acts that he committed against her.*" (RR8: 112) (emphasis supplied). Thus, the State used the guise of impeachment to use extraneous offense evidence to prove character conformity, using Melissa as a strawman in violation of the principles of *Hughes, Barley,* and

*Pruitt.* The trial court abused its discretion in allowing this subterfuge to admit extraneous offense evidence to prove character conformity in violation of rule 404.

*Harm*

Violations of evidentiary rules are non-constitutional errors to be disregarded unless an appellant's substantial rights were affected. TEX. R. APP. P. 44.2(b). Appellant's substantial right to a fair trial was denied because he was not tried for the charged offense in accord with the evidence rules but instead was (1) tried largely based upon extraneous chokings of Melissa; and, (2) with the State using the eyewitnesses as "strawmen." The State knew all three recanted (RR8: 28) and they systematically denied Appellant committed the alleged crime. (RR7: 266, 278; RR8: 158, 288, 301; RR10: 116). However, as Appellant complains of throughout, the State was allowed to use these witnesses as strawmen to introduce prior recorded interviews and documents concerning each to attack their credulity, introduce earlier disavowed statements, and unleash a torrent of extraneous offense evidence.. (St. Ex. 3, St. Ex. 11; St. Ex. 4A; St. Ex. 46). Considered in context of the entire trial it cannot be said that the errors in allowing the State to use extraneous offense evidence in the guise of impeachment was harmless error. Appellant's seventh and eighth points of error should be sustained, and Appellant's conviction should be reversed.

**Point of Error 9, Restated**

39

**The trial court erred by admitting Lee's interview with Lakisha because it was hearsay and no exception to the hearsay rule applies.**

**Point of Error 10, Restated**

**The trial court erred by admitting extraneous offense evidence Appellant choked Melissa within Lee's interview with Lakisha.**

**Point of Error 11, Restated**

**The trial court erred by admitting Morgan's conversation with Lakisha because it was hearsay and no exception to the hearsay rule applies.**

**Point of Error 12, Restated**

**The trial court erred by admitting extraneous offense evidence within Morgan's conversation with Lakisha.**

**Point of Error 13, Restated**

**The trial court erred by admitting Hurt's interview with D. because it was hearsay and no exception to the hearsay rule applies.**

**Point of Error 14, Restated**

**The trial court erred by admitting extraneous offense evidence within Hurt's interview with D.**

Because the applicable law and application are functionally equivalent, Appellant argues these issues jointly for conciseness. TEX. R. APP. P. 38(i).

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *Martinez*, 327 S.W.3d at 736. A trial court does not abuse its discretion when its decision is "within the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391.

40

St. Ex. 3 contains Lee's interview with Lakisha and in-car recordings for Morgan and Carroll. (RR8: 220-21). Appellant objected the exhibit was hearsay. (RR8: 220). The State submitted Lakisha's initial statements to Carroll and Morgan were rule 803(2) excited utterances as well as depiction of Lakisha's mental, emotional, and physical condition under rule 803(3), or, it was an rule 803(5) recorded recollection. (RR8: 221-24). Alternatively, the State offered the recordings to impeach Lakisha. (RR8: 224). Appellant replied "the then existing mental . . . condition [exception] isn't just a free way for . . . a [hearsay] stream of consciousness . . . ." (RR8: 225-26). The trial court overruled the objections. (RR8: 227). After logistical discussion, Appellant noted the witness must vouch for accuracy under rule 803(5). (RR8: 228). The State replied it believed Lakisha testified she reviewed it "and did say those things" and "that is a good endorsement of it, as accurate as you can get." (RR8: 228). The trial court overruled Appellant's objections. (RR8: 228).

St. Ex. 3, Lee's portion, was played before the jury. (RR8: 228-230).

Lee testified he called for a welfare check on Melissa and the other two daughters. (RR8: 230). The recording resumed at 11:22:59. (RR8: 230-31). The jury was instructed to disregard this portion about an unrelated charge of sexual assault. (RR8: 231-32). The next section discusses Lakisha's biological father.

41

(RR8: 233) (St. Ex. 3 at 11: 26:17-11:27:04). It was played from 11:27:04. (RR8: 234). Appellant objected under 404(b) and 403; the State responded she was "about to clarify . . . a discipline issue." (RR8: 234). The trial court overruled the objections and the video was played to 11:30:59. (RR8: 234).

At 11:30:53-55 she relates Appellant once popped her in the face. Play was resumed at 11:33:58 and paused at 11:36:49 when Appellant requested a running objection pursuant to rules 404(b) and 403; the State responded its relevant to context and family relationships and why victims are not cooperative; the trial court overruled the objections. (RR8: 235-37). Next, Lakisha discusses prior incidents of Appellant choking and punching Melissa and characterizes Appellant as controlling. (RR8: 235-36) (St. Ex. 3 at 11:33:58 to 11:36:49).

Then recording was played to 11:45:05. (RR8: 237). She then describes Appellant's emotional abuse of Melissa and Lakisha discusses the incident. (RR8: 237) (St. Ex. 3 at 11:36:49 to 11:45:05). From 11:38:00 to 11:39:00 Lakisha admits she was on pills, Appellant ordered her to go home, she did not, Appellant grabbed the back of her neck, she broke free, and Appellant choked her. From 11:39:00 to 11:40:45 she recaps this story under Lee's questions and confirms she had pain from Appellant grabbing her neck. From 11:41:00 to 11:41:50 she confirms Appellant choked her, Melissa told him to stop, he stopped, and Lakisha ran.

The next section was 11:45:41 to 11:57:37. (RR8: 237). Lakisha discusses notes the argument with Appellant also concerned his threat to send her to live with his family and discusses her general unhappiness with Appellant. (RR8: 237) (St. Ex. 3 at 11:45:41 to 11:57:37). At 11:54:40 to 11:55:10 she noted she was afraid Appellant would hurt Melissa over her.

It was played beginning at 11:57:37 until 11:59:04 (RR8: 238). Lakisha then says D. was outside and Melissa saw. (RR8: 238) (St. Ex. 3 at 11:57:37 to 11:59:04). It was played beginning at 12:06:11 to 12:14:05 (RR8: 239). During the final portion, Lee leaves Lakisha alone with her grandmother. Lakisha says she does not want to return home and it would be worse, nothing would change, she currently hated Appellant, discusses her friendship with a lesbian and that she had the same issue in that her mother also beat her father, also, she admits this person had attacked her. (RR8: 239) (St. Ex. 3 at 12:06:11 to 12:14:05).

*St. Ex. 3, Morgan's Portion*

During Morgan's testimony, Appellant objected to Morgan's portion of St. Ex. 3 as hearsay. (RR9: 19). The court refused to admit it under rule 803(2). (RR9: 20-26). The State argued it was a recorded recollection under 803(5); the trial court overruled defense objection and admitted it under rule 803(5), noting it was not impeachment evidence. (RR9: 27-30).

43

Appellant objected to specific portions of this excerpt. At 19:18:10 Lakisha states she is tired of all the abuse, Appellant objected under 404(b) and 403. (RR9: 31). The State replied prior strangulations were already in evidence and redaction would be superfluous. (RR9:32). The trial court overruled Appellant's objection. (RR9: 32). Appellant objected on the basis of 404(b) and 403 to the statement that Appellant abused Melissa for twelve years. (RR9: 32). The trial court overruled Appellant's objection. (RR9: 33).

Appellant objected to "He should not choke me"; the trial court overruled the objection. (RR9: 35). Appellant asked "that is not impeachment. That is recorded recollection?" (RR9: 35). The trial court state it was admitted "under the same theory." (RR9: 36). Appellant objected to Lakisha's statement that "When you have bad parents, you cut yourself, you take pills." (RR9: 36). The trial court overruled the objection, stating it could "be played on the same basis." (RR9: 36). Appellant objected to "at 23" where Lakisha said Appellant abused Melissa "real bad, choked her in front of us, black eyes, beat her and beat her." (RR9: 36). The trial court overruled the objection. (RR9: 36).

The tape played beginning at 19:29:29 and paused at an indeterminate juncture. (RR9: 37). The State submitted this was relevant because at the beginning they were talking about the offense so it was "admissible as a recorded recollection." (RR9: 38). As for the rest, the State argued that it concerned the

44

recitation that if Lakisha runs away they will pick her up and take her home. (RR9: 38). The court asked about the portion concerning Lakisha's hobby. (RR9: 38). The State argued this proved Lakisha was not high. (RR9: 38-39). Appellant said he wanted to "keep running my objections . . . it's not an exception to the hearsay rule." (RR9: 39). The trial court ruled the question and response concerning a hobby was irrelevant but admitted the part of her running away and picking up and overruled Appellant's objections possibly to 19:35:50. (RR9: 39-40).

Asked about the subject of the argument, Lakisha recounts Appellant believed she wanted to be with a girl but she just hated living with Appellant. (St. Ex. 3 at 19:29:45-47). The State then played beginning at 19:45:06 and Appellant noted "[s]he said, 'And I jumped on his ass about it.'" (RR9: 45-46). The trial court overruled Appellant's objection. (RR9: 46). The State then played from an indeterminant starting time to 19:45:55. (RR9: 46). The trial court overruled Appellant's objections. (RR9: 46). The State then played ending at 19:46:01 where the State recites Lakisha tells Melissa she was sorry and Melissa says "It ain't your problem." (RR9: 46). The trial court ruled this portion inadmissible. (RR9: 47). Appellant objected to the recording in its entirety. (RR9: 47).

Before the jury Morgan's portion of St. Ex. 3 was played. (RR9: 52). The officer says "she says something about being choked he says I did not choke nobody." (St. Ex. 3 at 19:16:12-19). Lakisha tells the officer she took some pills.

45

*Id.* at 19:17:37-40. Appellant got mad. *Id.* at 19:17:50-57. She tried to leave, and apparently said something to Appellant, and Appellant grabbed her and then (demonstrating) choked her with two hands. *Id.* at 19:18:10-22. Lakisha reported Appellant abused Melissa for about twelve years. *Id.* at 19:19:12-17. Morgan testified Lakisha was grabbing her collar. (RR9: 53). Lakisha says he should not choke her. (St. Ex. 3 at 19:20:00). Lakisha recounts that in the past Appellant had choked and beaten Melissa. (RR9: 54) (St. Ex. 3 at 19:23:13-30). The exhibit was played from 19:45:13 to 19:45:55. (RR9: 58-59). During this section, Lakisha tells Melissa Appellant choked her; Melissa does not deny this. (RR9: 59).

*St. Ex. 11, Hurt's Interview of D.*

Hurt's recorded interview of D., St. Ex. 11, was reviewed outside the jury's presence. (RR9: 88, 108, 125-71). At about 02:10 Appellant objected D. "speculates: that Melissa "didn't tell her dad about Lakisha stealing the medication . . . she guesses that her mother was afraid that [Appellant] would be too mad." (RR9: 125). The State offered this to impeach D., Melissa, and Lakisha and argued it was a recorded recollection. (RR9: 126-28); Appellant objected D. did not testify the recording accurately reflected her knowledge. (RR9: 129); TEX. R. EVID. 803(5). The trial court overruled the objection and ruled it a rule 803(5) recorded recollection. (RR9: 131).

46

Another portion of the exhibit was played. (RR9: 134). Appellant noted "[s]he said that [La]kisha said that she couldn't breathe, but then she said, "But I don't know."" And argued "803(5) has to to be interpreted more narrowly . . . in terms of accurately reflecting personal knowledge." (RR9: 134). The State responded that Lakisha was stating her present sense impression and, two, it impeaches her credibility; the trial court overruled the objections. (RR9: 134-35).

Another portion was played and Appellant objected under rules 404(b) and 403. (RR9: 135). The court granted Appellant a running objection and inquired if counsel objected to the most recent portion; counsel said, "she said they've had an abusive relationship." (RR9: 136). The trial court overruled the objection. (RR9: 136).

Play was resumed at 06:04 and stopped at 6:32 and 8:22. (RR9: 160-61). Appellant objected that she said she thinks Melissa was scared, and argued "It's got to reflect accurate knowledge, personal knowledge under the hearsay exception." (RR9: 161). The trial court overruled the objection. (RR9: 161).

Appellant objected that from 15:46 to 18:36 there was "innuendo." (RR9: 167). And, Appellant complained she talks about how he always grabs Melissa on the neck. (RR9: 167-68). So, Appellant objected to the officers' hearsay and the second part under hearsay, 404(b), and 403. (RR9: 168). The objections were overruled. (RR9: 168).

47

Hurt's interview with D. was played for the jury. (RR9: 179) (St. Ex. 11). D. said Lakisha acted high. (St. Ex. 11 at 00:25). Lakisha admitted taking Melissa's Xanax, Melissa got onto Lakisha for taking Xanax. *Id.* at 01:11-01:19. Melissa told Appellant about Lakisha taking the Xanax. *Id.* at 02:06-02:08.

At home, when Lakisha got out of the car she was going to walk away. *Id.* at 02:23-24). Appellant grabbed her shirt and put her in a chokehold. *Id.* at 02:25-34; 15:25-28. Appellant pulled her shirt hard, knotting it up. *Id.* at 03:23-39. D. recalled Lakisha said she could not breathe at all. *Id.* at 03:45-52. D. saw this. *Id.* at 03:54-56. D. thought it was Appellant's right arm. *Id.* at 04:30-33. Melissa said "you are not going to grab my daughter like that." *Id.* at 02:25-34. When Melissa told Appellant not to grab Lakisha like that, he let go. *Id.* at 05:10-15. Appellant cussed Melissa. *Id.* at 02:55-3:17. A car drove by and D. guessed they saw the choking and they picked Lakisha up. *Id.* at 02:35-41.

Appellant had never choked the kids before. *Id.* at 05:49-54. Appellant had choked Melissa before, they had an abusive relationship. *Id.* at 05:55-59. Lakisha told D. she was scared Appellant would hurt Melissa or her. *Id.* at 06:21-35. Melissa had seen Appellant hit Melissa with his fist a long time ago. *Id.* at 06:59-07:03.

It had been five or six months since Appellant assaulted Melissa. *Id.* at 06:34-06:49. In this incident, Appellant held Melissa in a chokehold and she could

not breathe, the police came. *Id.* at 07:09-17. Appellant punched and choked Melissa this time. *Id.* at 12:02-06.

The next day when Appellant went to work, Melissa and her daughters went to Belton. *Id.* at 07:18-24. Asked why they came back, D. said Appellant harassed Melissa, apologized, and they began talking again. *Id.* at 07:29-57. Appellant found them in Belton; D. believed they returned because Melissa was scared of Appellant. *Id.* at 07:58-08:47.

D. recalled that when they followed the truck, Melissa said Appellant deserved to go to jail for putting his hands on Lakisha. *Id.* at 13:32-57. Asked if Melissa would admit this, D. recalled that the night after the incident Melissa went home to Appellant and then called Lakisha and tried to convince her Appellant did not choke her. *Id.* at 13:59-14:42. D. also said Appellant put something in Lakisha's head that he did not choke her and he told her he was sorry and did not mean to choke her he was just trying to prevent her from running away. *Id.* at 14:54-15:14.

Recalling past abuse, D. said Appellant usually hit her on the face and always grabbed on her neck; Melissa would try to tell the police what happened but was scared of what would happen when Appellant would get out of jail. *Id.* at 17:43-18:12.

*Argument*

49

Hearsay is generally inadmissible unless an exception obtains. TEX. R. EVID. 802. The hearsay rule does not exclude a recorded recollection, a "record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted when the matter was fresh in the witness' memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the documents trustworthiness. TEX. R. EVID. 803(5).

Lee's and Morgan's portions of St. Ex. 3, and St. Ex. 11 were not recorded recollections because, there was no showing that at trial that Lakisha or D. no longer possessed sufficient "recollection to enable [her] to testify fully and accurately."TEX. R. EVID. 803(5). Instead, Lakisha testified clearly that she was on pills, ran to the road, and Appellant grabbed her shirt but did not choke her. (RR7: 263-65, 278). D. testified clearly Lakisha was on pills, ran to the road, and she did not see Appellant touch Lakisha. (RR8: 281-88). Lakisha disavowed prior statements Appellant choked her as lies. (RR8: 54-55). D. disavowed her statements to police that Appellant choked Lakisha as being lies based upon what Lakisha told her, and noted Lakisha recanted. (RR8: 298-302). Concerning the extraneous abuse of Melissa, Lakisha testified clearly that Appellant had choked and disavowed her earlier reports as lies. (RR8: 49-54). Concerning the extraneous abuse of Melissa, D. testified in clear fashion that she reported Appellant's

50

extraneous abuse of Melissa. (RR8: 302-330). The witnesses' clear testimony is completely at odds with the rule's requirement that she lack sufficient recall.

That the exhibits were not used to refresh Lakisha's or D.'s recollection is telling. Rather, the exhibits were admitted and published *after* they testified. This proves this was an erroneous application of the recorded recollection hearsay exception. Moreover, their disavowals of the truth of the matters asserted in the exhibits cast most severe doubt upon the exhibits' "trustworthiness" in violation of TEX. R. EVID. 803(5). Therefore, the exhibits did not qualify as a recorded recollection exception to the hearsay rule and the trial court abused its discretion in admitting them.

Also, the trial court's ruling admitting extraneous abuse of Melissa through St. Ex. 3 and St. Ex. 11 because it allowed the State to prove character conformity by proving Appellant had a propensity to choke in violation of TEX. R. EVID. 404 and unfairly prejudicial evidence in violation of TEX. R. EVID. 404 even in the wake of Appellant's objections. *Cf.* (RR8: 235-37) (St. Ex. 3, Lee); (RR9: 31-32) (St. Ex. 3, Morgan); (RR9: 135-36); (St. Ex. 11). The evidence was nothing less than a torrent of recitations Appellant had beaten, choked, and emotionally abused Melissa. (St. Ex. 3, Lee at 11:33:58 to 11:36:49) played at (RR8: 235-36); (St. Ex. 3 Lee at 11:36:49 to 11:45:05) played at (RR8: 237); (St. Ex. 3 Morgan at 19:19:12-17) played at (RR9: 52-53); (St. Ex. 3, Morgan at 19:23:13-30; 19:29:29-

51

19:35:50) played at (RR9: 54); (St. Ex. 11 at 05:49-54; 05:55-59; 06:59-07:03; 06:34-06:49; 07:09-17; 12:02-06; 17:43-18:12).

Regarding an applicable rule 404(b) rationale to justify admission such as intent, Appellant notes he did not go beyond his not guilty plea to place his intent in issue for instance, by engaging in vigorous cross-examination of the eyewitnesses. Thus, Appellant's intent was not in issue and admission of this evidence was an abuse of discretion in violation of TEX. R. EVID. 404. *Robbins,* 88 S.W.3d at 261. Nor was it admissible to disprove a theory of accident, Appellant's defense was that he did not choke Lakisha, not that he accidentally choked her. The trial court abused its discretion in admitting this evidence in violation of the rules of evidence.

### *Harm*

Violations of evidentiary rules are non-constitutional errors that will be disregarded unless an appellant's substantial rights were affected. TEX. R. APP. P. 44.2(b) Here, there was no physical evidence as Lakisha had no visible injuries. (RR9: 16, 68-69, 79). The complainant and the eyewitnesses, Melissa and D. all denied in court that Appellant committed the offense charged. (RR7: 266, 278; RR10: 116) (Lakisha); (RR8: 158) (Melissa); (RR8: 288) (D. denying she saw Appellant touch Lakisha); (RR8: 301) (D. recalling Lakisha recanted).

52

The State knew all three had recanted (RR8: 28) but as Appellant complains and is well illustrated by the instant points, the trial was largely the State using the eyewitnesses as strawmen to introduce via improper impeachment their earlier recorded statements and a torrent of extraneous offense evidence. (RR8: 49) (Lakisha's account); (St. Ex. 4A) (RR8: 150) (Melissa's written statement Appellant choked her admitted only for impeachment); (RR8: 162-68) (Londrie's testimony Melissa said Appellant choked her, admitted only for impeachment); (RR8: 302-05, 330-35) (D.'s account); (St. Ex. 3, Lee and Morgan).

In sum, the erroneous admission of St. Ex. 3 and St. Ex. 11 was the State trying their case by (1) using Lakisha, Melissa, and D. as "strawmen"; and (2) trying Appellant largely based upon extraneous chokings of Melissa. The error in admitting this testimony clearly affected Appellant's substantial rights as it was the State's case, one built upon inadmissible evidence. When considered in context of the entire trial it cannot be said that the error is harmless. Appellant's ninth, tenth, eleventh, twelfth, and thirteenth points should be sustained, and Appellant's conviction should be reversed.

### Point of Error 15, Restated

**The trial court erred in denying a request for a lesser included offense of assault by bodily injury.**

The trial court erred by denying his request to charge the jury on the lesser-included offense of assault. (RR10: 135-39). The indictment alleges Appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to Lakisha Anthony, a member of defendant's family . . . by intentionally, knowingly, or recklessly impeding the normal breathing or circulation . . . by applying pressure to [her] throat or neck." (CR: 16). Appellant requested a lesser-included offense of family violence assault and relied upon the evidence that Appellant "grabbed ahold of her by the back of the neck, which would not cause occlusion from the back of the neck." (RR10: 135-37). He submitted this would support a finding of guilt for causing bodily injury under TEX. PEN. CODE ANN. § 22.01(a)(1) without a concomittant finding of impeding breath or circulation under § 22.02(b)(2)(B). (RR10: 136-37).[5]

The State argued the standard for "recklessness is . . . conscious disregard, of a substantial and unjustifiable risk that the circumstances exist or the result will occur, and the risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all of the circumstances." (RR10: 138); TEX. PEN. CODE ANN. § 6.03(c). The State submitted there was no evidence that Appellant preventing Lakisha from running into the road "would be a gross deviation from the standard of care that an

---

[5] Appellant secondly submitted this evidence could also support a finding of guilt for causing offensive bodily contact under TEX. PEN. CODE ANN. § 22.01(a)(3). (RR10: 137).

54

ordinary person would exercise under all of the circumstances." (RR10: 138-39). The State additionally submitted there was an avenue for acquittal in the charge passage on accident or mistake. (RR10: 139). The trial court denied Appellant's request. (RR10: 139).

When analyzing a jury-charge error issue, the reviewing court first decides if error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, the reviewing court analyzes the error for harm. *Id.*

An offense is a lesser-included offense of a charged offense where, *inter alia*, it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. TEX. CODE CRIM. PROC. ANN. art. 37.09(1). In determining whether a lesser-included offense instruction should have been submitted, the reviewing court first determines "whether the lesser-included offense is included within the proof necessary to establish the offense charged." *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011) (citing *Hall v. State*, 225 S.W.3d 524, 531 (Tex. Crim. App. 2007). This is a question of law and does not depend upon the trial evidence. *Rice*, 333 S.W.3d at 144 (citing *Hall*, 225 S.W.3d at 535). If this threshold is satisfied, the reviewing court next determines "if there is some evidence in the record which would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice*, 333 S.W.3d at 145 (citing *Guzman v. State*, 188 S.W.3d 185, 188-89 (Tex.

Crim. App. 2006); *Hall*, 225 S.W.3d at 536). In this determination, "[t]he evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536)

First, Appellant was charged with family violence assault by strangulation the elements of which are: (1) intentionally, knowingly, or recklessly causing bodily injury; (2) committed against a family member; and, (3) committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck. (CR: 16); TEX. PEN. CODE ANN. §§ 22.01(a)(1), (b)(2), (b)(2)(B). The elements of assault by bodily injury are intentionally, knowingly, or recklessly causing bodily injury. TEX. PEN. CODE ANN. § 22.01(a)(1). Thus, the elements of assault by bodily injury are subsumed within the charged offense of assault – bodily injury – by strangulation; that is, the lesser-included misdemeanor assault here is established by proof of the same or less than all the facts required to establish commission of the charged offense. TEX. CODE CRIM. PROC. art. 37.09(1); *see e.g., Hughley v. State*, 06-15-00174-CR, fn.1 (Tex. App. – Texarkana, July 8, 2016) (mem. op.) (not designated for publication) (where defendant was originally charged with family violence assault by impeding breathing/circulation and the State abandoned the strangulation allegation,

56

defendant was left charged with the lesser-included charge of family violence assault).

Second, there is evidence in the record that would permit a jury to rationally find that, if Appellant was, he was guilty only of the lesser-included offense of assault by bodily injury and not by strangulation. Lakisha testified Appellant grabbed her shirt bottom and collar while she ran, but not hard (RR7: 264; RR8: 74) and did not impede her breath or circulation. (RR7: 266, 278; RR10: 116). Similarly, Melissa testified Appellant grabbed Lakisha's shirt as she ran (RR8: 92-93) and had no idea why Lakisha claimed she was choked. (RR8: 159). D. recalled Lakisha recanted the choking allegation and that she herself lied when she told police Appellant put Lakisha in a chokehold. (RR8: 288, 290, 301). Carroll related Appellant reported he grabbed Lakisha by the back of the neck; Melissa reported Appellant grabbed Lakisha by the back of the neck. (RR8: 180-81, 183-84). Holland testified Appellant said he grabbed Lakisha by the neck. (RR8: 274-76). During Lee's portion of St. Ex. 3, between 11:39:00 and 11:40:45, she confirms she had pain from Appellant grabbing her neck.

From this evidence the jury could have rationally concluded Appellant touched (applied pressure) to the back of Lakisha's neck either directly with his hand or by grabbing her collar as she ran and, by inference, caused pain and thus bodily injury. The jury could have simultaneously rationally concluded Appellant

57

did not choke Lakisha. Thus, there was some evidence that would have allowed the jury to rationally conclude that Appellant, if guilty, was guilty only of the lesser included offense of family violence assault by bodily injury.

*Harm*

Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be some harm to the accused from the error. TEX. CODE CRIM. PROC. ANN. art. 36.19; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If the absence of the lesser-included offense instruction left the jury with the sole option either to convict for offense charged or acquit, a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995); *O'Brien v. State*, 89 S.W.3d 753, 756 (Tex. App. - Houston [1st Dist.] 2002, no pet. h.). This is the case here.

Certainly, the State argued the charge provided an avenue for acquittal if the jury found Appellant accidentally or mistakenly caused Lakisha bodily injury. (RR10: 139) (referencing (CR: 221)). Nonetheless, Appellant's requested lesser-included offense – based upon a theory that Appellant caused Lakisha bodily injury without strangling her and without mistake or accident – was not provided to the jury. So, the jury was left with the all-or-nothing alternatives of convicting

Appellant of the charged offense or acquitting. *Cf. Saunders*, 913 S.W.2d at 571;

*O'Brien*, 89 S.W.3d at 756.

Further, a person convicted of a third degree felony theft with two prior felonies may be punished by confinement for life, or confinement for not more than 99 years or less than 25 years. TEX. PEN. CODE ANN. § 12.42(e). Appellant was convicted of third degree felony, and after a finding of two prior felony convictions, sentenced to life confinement. (RR11: 24). If Appellant had been convicted of misdemeanor assault, and the two enhancements were still found true, Appellant could only have been punished by confinement of not more than one year nor less than ninety days. TEX. PEN. CODE ANN. § 12.43(a). Because the jury did not have the option to find Appellant guilty of the lesser-included offense of bodily injury family violence assault, Appellant was harmed by the trial court's error. The instant issue should be sustained and Appellant's conviction reversed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Court will reverse his conviction for family violence assault by impeding breath or circulation and remand to the trial court a new trial.

Respectfully submitted,

*/s/ Michael P. Levine*
Michael P. Levine

59

State Bar No. 24009767
325 Saint Paul St. Ste. 2100
Dallas, TX 75201-3871
(214) 741-6500 *(phone)*
mp.levine@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing brief was served on the Brown County District Attorney's Office, Brown County Courthouse, 200 South Broadway, Brownwood, TX 76801 via electronic service on June 9, 2017.

*/s/ Michael P. Levine*
Michael P. Levine

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in this document, which is prepared in Microsoft Word 2010, is 15,154.

No. 11-16-00244-CR

IN THE ELEVENTH COURT OF APPEALS
EASTLAND, TEXAS

FILED IN
11th COURT OF APPEALS
EASTLAND, TEXAS
06/27/17 1:26:46 AM
SHERRY WILLIAMSON
Clerk

DWAYNE UTERRAL HARDEMAN,

*APPELLANT,*

V.

THE STATE OF TEXAS,

*APPELLEE.*

APPELLANT'S AMENDED CERTIFICATE OF COMPLIANCE

MICHAEL LEVINE
S.B.O.T# 24009767
WILLIAM D. COX III
S.B.O.T.# 04956497
325 N. ST. PAUL STREET
SUITE 2100
DALLAS, TEXAS 75201

TO THE HONORABLE ELEVENTH COURT OF APPEALS:

Pursuant to TEX. R. APP. P. 38.7 and 38.9(a), the Appellant, Dwayne Uterral Hardeman, files this Amended Certificate of Compliance.

Appellant's opening brief contained a Certificate of Compliance reflecting a word count of 15,154, in contravention of TEX. R. APP. P. 9.4(i)(2)(B).

Counsel respectfully apologizes for failing to recognize the error or remedy it in an appropriately timely fashion.

However, while counsel intended to request permission to exceed the prescribed limitations, a subsequent recount of those portions "included" pursuant to the rule reveals that the Appellant's Brief, as filed, is in fact compliant. Accordingly, Appellant respectfully amends the Certificate of Compliance as follows:

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in the *Brief for Appellant*, filed June 9, 2017, has a word count of 13,435, as provided by the word count feature of the word processing program used to prepare the brief, WordPerfect X7.

*/s/ Michael P. Levine*
Michael P. Levine

Respectfully submitted,

*/s/ Michael P. Levine*
Michael P. Levine
State Bar No. 24009767
325 Saint Paul St. Ste. 2100
Dallas, TX 75201-3871
(214) 741-6500 *(phone)*
mp.levine@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing brief was served on the Brown County District Attorney's Office, Brown County Courthouse, 200 South Broadway, Brownwood, TX 76801 via electronic service on June 27, 2017.

*/s/ Michael P. Levine*
Michael P. Levine